584 So.2d 1035 (1991)
Billy BURDICK, Appellant,
v.
STATE of Florida, Appellee.
No. 90-619.
District Court of Appeal of Florida, First District.
July 25, 1991.
*1036 John L. Miller of Johnson, Green & Locklin, P.A., Milton, and Billy Burdick, pro se, for appellant.
Robert A. Butterworth, Atty. Gen. and Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
James T. Miller, Asst. Public Defender, Jacksonville, for amicus curiae, Florida Ass'n of Criminal Defense Lawyers.
Arthur I. Jacobs, Fernandina Beach, for amicus curiae, Florida Prosecuting Attys. Ass'n.
EN BANC
MINER, Judge.
Raising several issues, Burdick seeks review of his convictions and sentences for two counts of grand theft of a firearm, grand theft and burglary of a dwelling while armed. Among his arguments on appeal, appellant urges that the trial court erred in failing to give written reasons for departing from the sentencing guidelines. He also asserts that the evidence adduced at trial was insufficient to exclude every reasonable hypothesis of innocence and to support his convictions for armed burglary and theft of firearms. Finding that the trial court was not required under the facts of the case to ascribe written reasons for the sentences he imposed and further that the evidence supports appellant's convictions, we affirm as to these points without further elaboration. While we also affirm as to the other issues raised, we believe appellant's supporting arguments are deserving of more extended comment.
After the jury found appellant guilty of armed burglary of a dwelling, the trial court sentenced him as an habitual felony offender to life in prison. On appeal, appellant argues (1) that the trial judge erred in concluding that the habitual felony offender statute required that appellant be sentenced to life in prison once the court made the decision to classify appellant as an habitual felony offender; (2) that he should not have been sentenced as an habitual felony offender because the substantive offense for which he was convicted is punishable by a life sentence; and (3) that the habitual felony offender statute is unconstitutional because it provides a greater penalty for an habitual felony offender convicted of a first degree felony than it does for an habitual violent felony offender also convicted of a first degree felony.
With respect to appellant's first argument, the record reflects that at the sentencing hearing, the state argued that if *1037 the court found that appellant was an habitual felony offender, it was required to sentence him to life in prison because he had been convicted of a first degree felony. Section 775.084(4)(a), Florida Statutes (Supp. 1988), provides:
The court, in conformity with a procedure established in subsection (3), shall sentence the habitual felony offender as follows:
1. In the case of a felony of the first degree, for life.
Appellant suggests that a life sentence was discretionary rather than mandatory, relying upon language in a 1988 case, State v. Brown, 530 So.2d 51 (Fla. 1988), in which the supreme court stated that the word "shall" in the 1985 version of this subsection "either was an editorial error or a misapprehension of actual legislative intent by the editors," and that the legislature actually intended that the life sentence be permissive rather than mandatory. Id. at 53. However, Brown involved the relationship between the new sentencing guidelines and the habitual offender statute, and the court essentially concluded that a trial judge could not exceed the guidelines recommendations simply on the basis of habitual offender status, therefore the life sentence in the habitual offender statute could not be construed as mandatory. Since that time, the legislature has provided that habitual offender sentencing is exempt from the sentencing guidelines.
This court recently held in Donald v. State, 562 So.2d 792 (Fla. 1st DCA 1990), that the trial court initially has discretion whether to sentence a defendant under the habitual felony offender statute or the guidelines, but that "[o]nce the court decides, however, to sentence a defendant as an habitual felony offender or habitual violent felony offender, then the court is required to impose sentence in conformity with sections 775.084(4)(a) or 775.084(4)(b)." Id. at 795 (emphasis added). We hold that because the trial court concluded that the habitual felony offender statute was applicable, it properly sentenced appellant to life in prison. Accord State v. Allen, 573 So.2d 170 (Fla. 2d DCA 1991).
Appellant next argues that because his conviction for burglary of a dwelling while armed is a first degree felony punishable by a term of years not exceeding life imprisonment pursuant to section 810.02(2), Florida Statutes (Supp. 1988), then he cannot be punished under the habitual offender statute. This argument is predicated on some dicta in Barber v. State, 564 So.2d 1169 (Fla. 1st DCA 1990), review denied, 576 So.2d 284 (Fla. 1991). There, Barber had argued that the statute does not bear a reasonable relationship to a legitimate state interest because the most dangerous offenders are excluded from enhanced sentencing by virtue of the fact that "[a] person cannot be sentenced as a habitual felony offender if his offense is classified as a first degree felony punishable by life, a life felony, or a capital offense." This court responded to the argument by stating that "[a]lthough subsection (4) makes no provision for enhancing sentences if the original sentence falls into one of the above categories," this was not a violation of the equal protection clause because the "legislature may have determined that these punishments are already sufficiently severe to keep the felon in prison for an extended period of time." Therefore, as appellant here argues, this court assumed that the habitual offender statute did not apply to felonies punishable by life imprisonment.
We find Barber not to be controlling in the instant case. Barber was convicted of escape, a second-degree felony, therefore this court was not specifically considering the enhancement of a sentence for a first-degree felony, as in the case at bar. Moreover, the habitual offender statute addressed in Barber was the 1987 version which was substantially rewritten by the Florida Legislature in 1988 to take penalties prescribed under the statute outside the umbrella of the sentencing guidelines and to allow the trial court to impose the penalty of life imprisonment on a defendant by simply making a determination that the defendant fit the statutory definition of an habitual felony offender. Westbrook v. State, 574 So.2d 1187 (Fla. 3d DCA 1991). In essence, appellant here asks us to judicially amend Section 775.081, *1038 Florida Statutes to add another classification of felonious crime, that of "first degree felony punishable by life". We decline appellant's invitation and, in doing so, observe that a first degree felony, no matter what the punishment imposed by the substantive law that condemns the particular criminal conduct involved, is still a first degree felony and subject to enhancement by Section 775.084(4)(a)(1), Florida Statutes.
In Paige v. State, 570 So.2d 1108 (Fla. 5th DCA 1990), the Fifth District reached the same conclusion. In that case, the appellants were convicted for kidnapping, which is also a first degree felony punishable by a sentence not exceeding life imprisonment "or as provided in ... s. 775.084." Id. at 1108 (quoting s. 787.01(2) Fla. Stat. 1989). Appellants claimed that the trial court erred in applying the habitual offender statute because life sentences are not subject to habitual offender enhancement. The court disagreed, stating that "[s]ince kidnapping is a first-degree felony, appellants' sentences therefor can be enhanced pursuant to section 775.084" but that a life felony cannot be enhanced. Id. at 1109. See also Tucker v. State, 576 So.2d 931 (Fla. 5th DCA 1991). Similarly, in the case at hand, appellant was convicted of a first degree felony rather than a life felony. The maximum sentence for armed burglary is a life sentence but it is not the only sentence. Therefore, we find that the trial court properly applied section 775.084.
Lastly, appellant urges that the habitual offender statute is unconstitutional because of what he perceives to be impermissibly disparate treatment among and between persons upon whom the statute operates. He argues that Section 775.084 provides for a greater penalty for an habitual felony offender convicted of a first degree felony than for an habitual violent felony offender who commits a first-degree felony because the latter may become eligible for parole while the former may not. While such an argument may have some superficial appeal, more indepth analysis persuades us that appellant's contention in this regard is flawed and thus unavailing.
Section 775.084(4)(b) provides the same enhanced sentences for habitual violent felony offenders as for habitual offenders, but in addition expressly states that violent offenders are not eligible for release for specified minimum terms (15 years for first degree felonies). We acknowledge that this language can be construed to implicitly authorize release for violent felony offenders sentenced to life after they have served the minimum sentence. However, Section 775.084(4)(e) provides:
The provisions of Chapter 947 shall not be applied to such person. A defendant sentenced under this section shall not be eligible for gain-time granted by the Department of Corrections except that the Department may grant up to 20 days of incentive gain-time each month as provided for in section 944.275(4)(b).
Chapter 947 deals with parole. Section 944.275(2)(a) permits incentive gain-time under subsection (4)(b) only for prisoners "sentenced to a term of years". Thus, prisoners sentenced to life are not eligible. Therefore, by construing subsections (4)(a), (b), and (e) together, appellant claims that he is not entitled to parole or gain-time, but that an habitual violent felony offender sentenced to life is entitled to some form of release after serving a minimum sentence. We disagree.
Although habitual offenders serving life sentences are not eligible for parole [section 775.084(4)(e)] nor basic gain-time [Fla. Admin. Code Rule 33-11.0045(1)(C)], nor incentive gain-time [Fla. Admin. Code Rule 11.0065(5)(g)], nor administrative gain-time [Fla. Admin. Code Rule 11.017(2)(g)], they may accumulate incentive gain-time on paper "so that in the event the life sentence is commuted to a number of years, the accumulated incentive gain-time will be applied to the inmate's sentence." Fla. Admin. Code Rule 11.0065(5)(g). At the same time, the rule provides that no inmate sentenced as an habitual violent felony offender "shall be credited with incentive gain-time in an amount which would cause the inmate's release from incarceration prior to service of the mandatory minimum term imposed pursuant to that section." Fla. Admin. Code Rule 11.0065(3)(e). Therefore, *1039 we construe the statute as providing that both habitual violent felony offenders and habitual felony offenders serving life sentences are not eligible for parole or gain-time, but if a life sentence is commuted to a term of years, both types of offenders are eligible for any incentive gain-time that has been accumulating on paper. However, habitual violent felony offenders originally sentenced to life must serve 15 years before being eligible for release.
Accordingly, we affirm the judgment of convictions and sentences appealed from. However, because our decision may be in conflict with State v. Brown, 530 So.2d 51 (Fla. 1988), we certify the following question to the supreme court, as we did in State v. Fannin, 578 So.2d 471 (Fla. 1st DCA 1991):
IS A LIFE SENTENCE PERMISSIVE OR MANDATORY UNDER THE 1988 AMENDMENT TO SECTION 775.084(4)(a)1, FLORIDA STATUTES?
We also certify the following question as one of great public importance:
IS A FIRST DEGREE FELONY PUNISHABLE BY A TERM OF YEARS NOT EXCEEDING LIFE IMPRISONMENT SUBJECT TO AN ENHANCED SENTENCE OF LIFE IMPRISONMENT PURSUANT TO THE PROVISIONS OF THE HABITUAL FELONY OFFENDER STATUTE?
JOANOS, C.J., and SMITH, BOOTH, SHIVERS, WIGGINTON, NIMMONS, BARFIELD, ALLEN, WOLF and KAHN, JJ., concur.
ZEHMER, J., concurs in result only.
ERVIN, J., concurs and dissents with opinion.
ERVIN, Judge, concurring and dissenting.
I concur in the result reached by the majority regarding issues one and three but dissent as to issue two. Because of my proposed disposition in this dissent of the three points raised, I choose to reverse the order in which they are presented. Accordingly I shall first address issue three, relating to the constitutional challenge to Section 775.084(4), Florida Statutes (Supp. 1988), as violative of the Equal Protection Clause on the ground that subsection (4)(b) of the statute authorizes early release to a habitual violent felony offender serving an enhanced life sentence after the expiration of a fifteen-year mandatory sentence, whereas subsection (4)(a) disadvantages habitual nonviolent felony offenders serving enhanced life sentences because there is no similar provision therein entitling such felons to early release. As to this issue, I agree with the majority that there is no denial of equal protection, and I concur in upholding the statute's validity, although my reasons are different from those stated in the majority's opinion. I cannot agree with the majority's apparent conclusion that Florida Administrative Code Rule 11.0065(5)(g), by itself, can support a statute which is so poorly drafted. The future possibility of a life sentence being commuted to a term of years based on the discretionary exercise of executive clemency is too tenuous a reed to support the statute against a constitutional challenge.
Nevertheless, because it is our obligation to avoid constitutional rulings in cases where a statutory construction would suffice, I regard the language in section 775.084(4)(b)1., implying that a habitual violent felony offender shall be eligible for release after the service of a fifteen-year mandatory minimum sentence, as mere surplusage. Cf., Advisory Opinion to Governor, 146 Fla. 622, 1 So.2d 636, 638 (1941). See also 49 Fla.Jur.2d Statutes § 119 (1984). I think it obvious, as previously alluded to by the majority, that both habitual violent and nonviolent felony offenders receiving life sentences are similarly disadvantaged. Neither offender, absent the commutation of his or her sentence, is eligible for early release under current law prior to the expiration of his or her life, because an enhanced life sentence is simply that, making its recipient ineligible for parole, basic gain time, incentive gain time, or administrative gain time. I would therefore disregard that language in section 775.084(4)(b)1., implying that a defendant serving a sentence of life may be eligible for release after the *1040 service of a specified mandatory term, as inconsistent with the otherwise clearly expressed legislative intent of the statute.
Turning to the second point, that the lower court erred in imposing an enhanced life sentence upon appellant because the substantive underlying offense for which he was convicted is punishable by a maximum penalty of life imprisonment, I agree and would reverse. In my judgment it is illogical to assume that the legislature intended for a trial judge to have the authority to impose an enhanced sentence of life upon one who was already subject to a maximum sentence of life imprisonment for the offense for which he or she was convicted. My conclusion is supported by the legislative history of both sections 775.08(2) and 775.084, Florida Statutes.
Section 775.082(3)(b), Florida Statutes (1987), provides two methods of punishing persons convicted of felonies of the first degree: "[B]y a term of imprisonment not exceeding 30 years or, when specifically provided by statute, by imprisonment of a term of years not exceeding life imprisonment[.]" See also Jones v. State, 546 So.2d 1134, 1135 (Fla. 1st DCA 1989). When the 1971 legislative session enacted in the same legislative act[1] section 775.082, establishing penalties for various categories of crimes, as well as section 775.084, creating the habitual offender classifications, the trial court's discretion to impose a maximum sentence within the range specified for all noncapital felonies was left unimpaired and remained so until October 1, 1983, the effective date of guideline sentencing.
Additionally, during the special session of November 1972, the legislature amended section 775.081 by designating "life felony" as an additional category to the list of felonies, and amended section 775.082 by adding subsection (4)(a), establishing as the penalty for a life felony "a term of imprisonment in the state prison for life, or for a term of years not less than thirty." Ch. 72-724, §§ 1, 2, Laws of Fla. In 1983, the penalty for a life felony was amended, providing for life felonies committed before October 1, 1983, a term of imprisonment for life or a term of years not less than thirty, and for life felonies committed on or after October 1, 1983, a term of imprisonment for life or a term of imprisonment not exceeding forty years. Ch. 83-87, § 1, Laws of Fla. The obvious intent of such amendment was to make Section 775.082(3)(a), Florida Statutes (1983), consistent with the newly created guideline sentencing, providing at Section 921.001(4)(a), Florida Statutes (1983), that the guidelines were to be applied to all felonies committed on or after October 1, 1983, except capital felonies, and to all felonies committed prior to October 1, 1983, except capital felonies and life felonies, when sentencing occurred subsequent to such date and the defendant chose to be sentenced under the guidelines.[2] Ch. 83-87, § 2, Laws of Fla.
Even though the legislature as early as 1972 created the classification of life felonies, it never amended the habitual felony offender statute to include enhanced sentencing for life felonies. As previously stated in this dissent, the legislature was no doubt aware that the trial courts' discretion to impose a sentence for the substantive offense within the maximum range remained unaffected until the creation of guideline sentencing. Consequently, the result reached by the majority is that persons who commit severe felony offenses categorized as life felonies after October 1, 1983 are eligible for guideline sentencing, whereas persons such as appellant who commit first degree felonies punishable for a term of years not exceeding life imprisonment are denied such consideration upon being classified as habitual felons, because section 775.084(4)(e) excludes habitual felony sentences from guideline sentencing and other benefits.[3] My thesis is, of course, *1041 not that the legislature could not validly make this kind of distinction  only that it did not intend to make it.
Nor can it be seriously contended that an offense punishable by a term of years not exceeding life may be enhanced because it does not authorize life imprisonment as its maximum punishment. See Ringel v. State, 352 So.2d 88 (Fla. 4th DCA 1977), opinion adopted, 366 So.2d 758 (Fla. 1978), in which the Fourth District rejected appellant's argument that an offense punishable by a term of years not exceeding life imprisonment did not include life imprisonment, and ruled that the maximum penalty provided for the offense for which appellant was charged was life imprisonment, not a term of years.
The state, however, points out that the statute establishing appellant's underlying felony offense, armed burglary, specifically provides that the offense is punishable either by a term of years not exceeding life imprisonment or as provided in section 775.084, the habitual felony offender statute. § 810.02(2), Fla. Stat. (1987). Hence, the state argues, the legislature has expressly manifested its intent by stating in the specific statute proscribing the underlying offense for which appellant was convicted that appellant may be habitualized and an enhanced life sentence imposed. I cannot agree that the statute's reference to the habitual offender statute is, under the circumstances, a clear reflection of legislative intent.
The reference in section 810.02(2) to section 775.084 appears in all noncapital felony and misdemeanor statutes listed under Title XLVI of the Florida Statutes. Thus, even though offenses which are designated life felonies were never made subject to enhanced sentencing under the habitual felony statute, reference to such statute is nonetheless made within each statute prescribing the penalty for life felonies. See, e.g., Section 787.01(3)(a)5., Fla. Stat. (1980) (kidnapping); Section 794.011(3), Fla. Stat. (1989) (sexual battery). Additionally, although section 775.084 had formerly provided enhanced sentencing for habitual misdemeanants, the legislature, effective October 1, 1988, deleted the provisions relating to habitual misdemeanants. See Ch. 88-131, §§ 6, 9, Laws of Fla. In the 1989 Florida Statutes, however, the legislature failed to delete references to section 775.084 in providing punishments for specified misdemeanors. See, e.g., Section 784.011(2), Fla. Stat. (1989) (assault), Section 784.03(2), Fla. Stat. (1989) (battery). Considering the legislature's wholesale indiscriminate reference to the habitual offender statute throughout the Florida Statutes, many of which are inapplicable, I do not consider that the state can take any comfort in the reference made in section 810.02(2) to section 775.084.
Consequently I conclude that the legislature has never intended for a substantive offense which carries a maximum penalty of life imprisonment to be included within the classification of felonies that are subject to an enhanced life sentence under the habitual felony offender statute, and that it intended only for first degree felonies which are punishable for a term of years to be so enhanced. At the very minimum, because section 775.084 is a penal statute and the provisions of subsections (4)(a)1. and (4)(b)1., enhancing a sentence to life, are so drawn as to leave the legislative intent in doubt, the courts are obligated to resolve such doubt in favor of the person who is so penalized. Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967); 49 Fla. Jur.2d Statutes § 195 (1984).
I would therefore reverse the enhanced sentence and remand the case with directions for the trial court to vacate the sentence of life imprisonment for an underlying offense which is punishable by a term of years not exceeding life imprisonment, and for the trial court either to impose a sentence therefor within the permitted guideline range, or a departure sentence, if valid reasons for departure are given. Nonetheless I agree with the majority in certifying the question to the Florida Supreme Court as one of great public importance.
*1042 If, in fact, first degree felonies so punishable may be enhanced, I consider that there is merit in appellant's first issue, asserting that the trial judge erred in concluding that the habitual felony offender statute mandates enhancing a sentence to life in prison, once the judge had made the decision to classify appellant as a habitual violent or nonviolent felony offender. Were it not for this court's decision in Donald v. State, 562 So.2d 792 (Fla. 1st DCA 1990), review denied, 576 So.2d 291 (Fla. 1991), by which I consider myself bound, I would dissent, in that this issue appears to be controlled by the Florida Supreme Court's decision in State v. Brown, 530 So.2d 51 (Fla. 1988). Brown, never referred to by this court in its Donald opinion, construed as permissive that language of Section 775.084(4)(a)1., Florida Statutes (1985), requiring a trial judge to sentence a defendant as a habitual felony offender, "[i]n the case of a felony of the first degree, for life." Brown, 530 So.2d at 53. Because the ultimate disposition of the case at bar depends upon whether the construction the supreme court placed upon the statute in Brown has continuing vitality, I think it appropriate for the supreme court to resolve that question, and accordingly I concur in certifying the question framed in the majority's opinion. Nevertheless, I have strong reservations, in view of Brown, whether Donald was correctly decided.
In saying the above, I recognize that Donald involved a construction of section 775.084(4)(b), relating to those provisions involving extended terms for habitual violent felony offenders, whereas appellant at bar was sentenced as a habitual nonviolent felon, pursuant to section 775.084(4)(a). The state nevertheless argues that the rule in Donald, logically extended, requires that enhanced sentences be imposed for both violent and nonviolent felony offenders. The state's argument, however, appears to be inconsistent with that made by it before the Third District in Smith v. State, 574 So.2d 1195, 1197 (Fla. 3d DCA 1991), in which the court's opinion specifically recited that the state had conceded, both in its brief and at oral argument, "that such a sentence [under section 775.084(4)(b)1] is not mandatory." Indeed, the Third District's holding, directly contrary to that of Donald, was that such a sentence was only permissive. Its decision was therefore consistent with what State v. Brown had concluded as to the statutory provisions regarding enhanced sentencing of habitual nonviolent felons.
In tracing the legislative history of section 775.084(4)(a)1., in which the mandatory term "shall" first appeared in the 1975 edition of the Florida Statutes, the supreme court in Brown concluded that the legislature never inserted such language in the official Florida Statutes, but that it appeared either as "an editorial error or a misapprehension of actual legislative intent by the editors." Id. The court thereupon decided that the statute must be considered as authorizing only a permissive maximum penalty of life in prison. Although the precise issue before the court related to whether the trial court had the authority to impose an enhanced life sentence upon the defendant as a habitual felony offender without giving valid departure reasons, the court's alternative reason as to the legislative intent is clear: The legislature never intended to mandate a maximum penalty of life in prison, despite the appearance of the word "shall" in the official Florida Statutes.
This court in Donald, without any reference to Brown, and notwithstanding the legislature's permissive use of the word "may" in Section 774.084(4)(b)1., Florida Statutes (Supp. 1988), which permitted the court to sentence a habitual violent felony offender, "[i]n the case of the felony of the first degree, for life," construed "may" as meaning "shall." The court so concluded, notwithstanding that the legislature employed the term "may" in both the session law and the compiled Florida Statutes  unlike the situation in State v. Brown. Because the legislature specifically, clearly and unambiguously expressed its intent to grant discretion to the trial courts regarding whether to impose maximum penalties on habitual felons, no need then arises to resort to statutory construction to determine *1043 whether a different result was intended. For example, in Tascano v. State, 393 So.2d 540 (Fla. 1980), the Florida Supreme Court stated that the use of the word "shall" was mandatory in Florida Rule of Criminal Procedure 3.390(a), which requires a trial court, upon request, to charge the jury on the maximum and minimum sentences which may be imposed.
The anomalous result of the decisions in Brown and Donald, if left unchanged, is that the trial courts retain discretion regarding whether to impose the maximum enhanced sentence on habitual nonviolent felony offenders, notwithstanding the appearance of the mandatory term "shall" in the Florida Statutes, see also State v. Padron, 571 So.2d 102 (Fla. 3d DCA 1990), but have no such discretion, pursuant to Donald, despite the legislature's explicit use of the term "may," when sentencing habitual violent felony offenders.
It is true that the legislature has taken no further action to amend subsection (4)(a), by changing the term "shall" to "may," nevertheless the rule is clear that when a statute is reenacted, the judicial construction placed thereon is presumed to have been adopted in the reenactment; therefore the courts are barred from changing the earlier construction. See Deltona Corp. v. Kipnis, 194 So.2d 295 (Fla. 2d DCA 1966). The state, however, argues that Brown has no continuing efficacy because there has been subsequent legislative activity in that the legislature, by adding subsection (4)(e) to section 775.084 in 1988, has removed habitual offender sentencing from the strictures of guideline sentencing. Again I cannot agree. The dictum in Brown stating that the word "shall" in the habitual offender statute was simply an editorial misprint remains highly persuasive. Moreover, the same legislative act, in adding subsection (4)(e), also added subsection (4)(b), creating enhanced sentencing for habitual violent felony offenders, and used the permissive term "may" in authorizing enhanced sentencing. See Ch. 88-131, § 6, Laws of Fla. It is specifically provided that acts passed during the same session amending the same statutory provision should be construed in pari materia, and full effect should be given to each. § 1.04, Fla. Stat. (1989).
Considering the above legislative changes in pari materia, I think it is entirely probable that the legislature, while removing habitual offender felony sentencing from the procedures provided for guideline sentencing, parole, and certain kinds of gain time, nevertheless intended for trial judges to retain discretion regarding whether to impose the maximum term provided for the enhanced sentences, on both violent and nonviolent habitual felony offenders. In my judgment, the legislative amendments effected in 1988 were in part designed to harmonize the enactments of the separate subsections by authorizing trial judges the same discretion in sentencing habitual violent felons as was previously given them in sentencing habitual nonviolent felons. Indeed, the legislature's reenactment of that portion of section 775.084(4)(c) in 1988 without change, stating that "[i]f the court decides that imposition of sentence under this section is not necessary for the protection of the public, sentence shall be imposed without regard to this section[,]" reinforces this belief.
In any event, because the legislative intent as to this issue is hardly free from doubt  partly because of judicial constructions placed on the statute  I would apply the same rule of construction previously stated to this penal statute and resolve the doubt in favor of the accused. I am therefore of the view that were it not for Donald, this court should reverse the sentence imposed and give the trial court the option of deciding whether to impose a life sentence or one of a lesser term of years. I concur, however, with the majority in certifying the question to the Florida Supreme Court.
NOTES
[1] Ch. 71-136, §§ 3, 5, Laws of Fla.
[2] Since 1988, of course, a guideline sentence is no longer available to a defendant who is sentenced as a habitual felony offender. See Section 775.084(4)(e), Florida Statutes (Supp. 1988).
[3] If the trial court below did not have the option of imposing a habitual felony offender sentence, absent valid reasons for departure, it would be required to impose a sentence within the permitted range of 4 1/2 to 9 years, pursuant to the scoresheet attached to the judgment and sentence below.