594 So.2d 267 (1992)
Billy BURDICK, Petitioner,
v.
STATE of Florida, Respondent.
No. 78466.
Supreme Court of Florida.
February 6, 1992.
Rehearing Denied March 25, 1992.
John L. Miller of Johnson, Green & Locklin, P.A., Milton, for petitioner.
Robert A. Butterworth, Atty. Gen., James W. Rogers, Chief, Bureau of Criminal Appeals, Senior Assistant Atty. Gen. and Charlie McCoy, Asst. Atty. Gen., Tallahassee, for respondent.
James T. Miller, Jacksonville, amicus curiae for Florida Ass'n of Criminal Defense Lawyers (FACDL).
Arthur I. Jacobs, Fernandina Beach, amicus curiae for Florida Prosecuting Attorneys Ass'n, Inc.
BARKETT, Justice.
We review Burdick v. State, 584 So.2d 1035, 1039 (Fla. 1st DCA 1991), in which the district court certified the following two questions of great public importance:[1]
[1.] Is a life sentence permissive or mandatory under the 1988 amendment to section 775.084(4)(a)1, Florida Statutes?
[2.] Is a first degree felony punishable by a term of years not exceeding life imprisonment subject to an enhanced sentence of life imprisonment pursuant to the provisions of the habitual felony offender statute?
We answer the first question by holding that sentencing under sections 775.084(4)(a)(1) and 775.084(4)(b)(1) is permissive, *268 not mandatory. We answer the second question in the affirmative.[2]
Petitioner Billy Burdick was convicted, among other offenses,[3] of armed burglary of a dwelling, a first-degree felony punishable by life imprisonment.[4] Burdick was sentenced as a habitual felony offender under section 775.084(4)(a)(1), Florida Statutes (1989), to a term of life imprisonment. The district court affirmed the sentence, but recognizing the potential conflict with State v. Brown, 530 So.2d 51 (Fla. 1988), certified the two questions at issue. We address the second certified question first.
The threshold question in this case is whether first-degree felonies punishable by life imprisonment are subject to enhancement under the habitual offender statute. That statute provides in relevant part:
(4)(a) The court, in conformity with the procedure established in subsection (3), shall sentence the habitual felony offender as follows:
1. In the case of a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
(b) The court, in conformity with the procedure established in subsection (3), may sentence the habitual violent felony offender as follows:
1. In the case of a felony of the first degree, for life, and such offender shall not be eligible for release for 15 years.
2. In the case of a felony of the second degree, for a term of years not exceeding 30, and such offenders shall not be eligible for release for 10 years.
3. In the case of a felony of the third degree, for a term of years not exceeding 10, and such offender shall not be eligible for release for 5 years.
§ 775.084(4)(a), (b), Fla. Stat. (1989) (emphasis added).
Burdick argues that, by its terms, section 775.084(4)(a) does not specifically provide for enhancement for first-degree felonies punishable by life imprisonment[5] and thus he must be sentenced under the guidelines. Burdick also argues that a term of years not exceeding life imprisonment (the penalty for a first-degree felony punishable by life imprisonment) is the functional equivalent of a term of imprisonment for life (the penalty for a life felony). Thus, Burdick argues, in terms of penal policy, there is no difference between a first-degree felony punishable by life imprisonment and a life felony. Burdick concludes that because the district courts of appeal have held that life felonies are not subject to habitual offender enhancement, see, e.g., Johnson v. State, 568 So.2d 519, 520 (Fla. 1st DCA 1990); Power v. State, 568 So.2d 511, 512 (Fla. 5th DCA 1990), neither are first-degree felonies punishable by life imprisonment. We disagree.
The legislature has created five categories of felonies: capital felony; life felony; felony of the first degree; felony of the second degree; and felony of the third degree. § 775.081(1), Fla. Stat. (1989). There is no separate classification for first-degree felonies punishable by life imprisonment. See Jones v. State, 546 So.2d 1134, 1135 (Fla. 1st DCA 1989) ("It is clear that there is no distinct felony classification of `first degree punishable by life,' but only a *269 first degree felony which may be punished in one of two ways."); but see Fla. R.Crim.P. 3.988(e) (listing "1st pbl" as a separate felony degree). Thus, a first-degree felony, regardless of the sentence imposed by the substantive law prohibiting the conduct, is still a first-degree felony under both the statutory classification and under the habitual offender statute.
Any other holding would be contrary to the policy behind the habitual offender statute. Clearly, the legislature intended first-degree felonies punishable by life imprisonment to be punished more severely than ordinary first-degree felonies. However, if first-degree felonies punishable by life imprisonment were not subject to enhancement under the habitual offender statute, then defendants convicted of first-degree felonies who were sentenced under the habitual offender statute would potentially receive harsher sentences than defendants convicted of first-degree felonies punishable by life who received guidelines sentences. This is especially true because sentencing under the habitual offender statute is entirely discretionary, whereas under the guidelines the trial judge is required to provide written reasons for departing from the prescribed network of recommended and permitted ranges. Moreover, defendants sentenced under the habitual offender statute are not eligible for basic gain time while defendants sentenced under the guidelines are eligible for both incentive and basic gain time. § 775.084(4)(e), Fla. Stat. (1989).
We also note that excluding first-degree felonies punishable by life imprisonment from the habitual offender statute would operate as a disincentive to the state attorney who might otherwise be inclined to prosecute an accused for a first-degree felony punishable by life but who instead chooses to pursue the less severe substantive penalty because only that penalty is subject to habitual offender enhancement.
To paraphrase the court below, Burdick would have us judicially amend section 775.081(1) to add another classification of felonious crime, that of "first-degree felony punishable by life." Just as the district court declined this invitation, so must this Court. We cannot rewrite legislative acts.
In response to the second certified question, Burdick argues that a trial judge sentencing a defendant under section 775.084(4)(a)(1) is not required to impose the maximum penalty provided in the statute, but rather can sentence the defendant anywhere up to the maximum sanction. We find this issue controlled by State v. Brown, 530 So.2d 51 (Fla. 1988). In Brown the Court held that "when a felony offender is properly habitualized and the guidelines sentence is less than life, the trial judge may not exceed the guidelines' recommendation absent a valid reason for doing so, notwithstanding the mandatory language of section 775.084(4)(a)1." 530 So.2d at 53. In so holding, the Court made a number of observations regarding the legislative history behind section 775.084(4)(a)(1):

We are further persuaded that the legislature never intended section 775.084(4)(a)1. to be mandatory. The word "shall" as used in section 775.084(4)(a)1. first appeared in the 1975 edition of Florida Statutes and has remained in all subsequent editions. After researching relevant session laws from the Laws of Florida (1975), we conclude that the legislature itself never inserted the word in the statute and that the word "shall" either was an editorial error or a misapprehension of actual legislative intent by the editors. Both chapters 75-116 and 75-298, Laws of Florida, the only two laws amending section 775.084 during the 1975 session, clearly use the word "may." This expresses an unequivocal legislative intent that the life sentence should be permissive, not mandatory. Moreover, no prior or subsequent legislation contained in the Laws of Florida has purported to change the word "may" to "shall."
Id. (emphasis added) (footnote omitted).
The State argues that the Brown decision is not controlling because the issue before the Court in Brown was the relationship between the new sentencing guidelines and the habitual offender statute. *270 Thus, according to the State, the precise holding in Brown was that the trial judge could not exceed the guidelines recommendation in sentencing a defendant as a habitual offender without giving valid departure reasons. Because the Court had previously held that habitual offender status was not a valid reason for departure, the State concludes that the Court was forced to construe the life sentence provision in the habitual offender statute as permissive in order to accommodate the conflicting recommendation of the sentencing guidelines.
Now, the State argues, the factual predicate for Brown has changed because in 1988 the legislature amended the habitual offender statute to make habitual offender sentencing independent of the sentencing guidelines. Ch. 88-131, § 6, Laws of Fla. Therefore, under the ambit of section 775.084(4)(e), Florida Statutes (1989),[6] the life sentences in subsections 4(a)(1) and 4(b)(1) of the habitual offender statute can now be read as mandatory, as the legislature originally intended, because those sentences can be imposed regardless of the guidelines' recommendations. In short, the State argues that the legislature amended section 775.084 to change the Court's interpretation of the habitual offender statute in Brown and thus it is irrelevant that the 1988 amendments did not correct the inconsistent use of the word "shall" in subsection 4(a) and the word "may" in subsection 4(b).
We disagree. In reality, it appears that the legislature amended section 775.084 contemporaneously with or shortly after the release of the Brown decision.[7] Ch. 88-131, § 6, Laws of Fla. Thus, it is unlikely that the legislature was even cognizant of this Court's decision in Brown when it enacted the 1988 amendments. There is no mention of the Brown decision in the legislative history of the 1988 amendments or any subsequent amendments to the habitual offender statute.
In any case, the only significant change in the 1988 version of the statute was the addition of subsection (4)(e). As the State concedes, the 1988 amendments did not alter the operative language in subsections (4)(a) or (4)(b).
Therefore, while it appears that in enacting subsection (4)(e) in 1988 the legislature was attempting to sever application of the habitual offender statute from the sentencing guidelines, and thus, in effect, to reverse the result in Brown, there is no indication that the legislature was making any statement as to whether sentencing under the habitual offender statute was mandatory or permissive. At most, the legislature was saying that the sentencing guidelines were no longer a limitation on habitual offender sentencing, regardless of the sentence imposed.[8]
*271 We note further that since the enactment of the statute in 1975, the legislature has never taken the opportunity to correct the obviously inconsistent language in subsections (4)(a) and (4)(b). Indeed, the legislature amended the habitual offender statute as recently as 1989, one year after Brown was decided. Ch. 89-280, § 1, Laws of Fla. It is a well-established rule of statutory construction that when a statute is reenacted, the judicial construction previously placed on the statute is presumed to have been adopted in the reenactment. See, e.g., Deltona Corp. v. Kipnis, 194 So.2d 295, 297 (Fla. 2d DCA 1966). Thus, contrary to the State's assertion, it seems clear that the legislature has now at least tacitly approved, not rejected, this Court's interpretation of subsection (4)(a) as providing for a permissive, as opposed to a mandatory, life sentence.
In any event, we note that our harmonious construction of section 775.084(4)(a) and section 775.084(4)(b) makes eminent sense. There is no reason why the legislature would have mandated life sentences for habitual first-degree felony offenders but left permissive the sentencing for habitual first-degree violent felony offenders. If anything, logic would dictate that the legislature would have intended the reverse.
It follows that section 775.084(4)(b), which expressly uses the discretionary word "may," is also permissive as to life sentencing. We are not persuaded by any of the State's arguments that we should construe the word "may" to mean "shall" when in the context of the same subsection we previously held the word "shall" to mean "may."
In conclusion, we hold, as the five district courts of appeal have held, that first-degree felonies punishable by a term of years not exceeding life imprisonment are subject to enhancement under the habitual offender statute.[9]See Lock v. State, 582 So.2d 819, 819 (Fla. 2d DCA 1991); Newton v. State, 581 So.2d 212, 213 (Fla. 4th DCA 1991); Westbrook v. State, 574 So.2d 1187, 1188 (Fla. 3d DCA 1991); Paige v. State, 570 So.2d 1108, 1109 (Fla. 5th DCA 1990).
We also hold that sentencing under sections 775.084(4)(a)(1) and 775.084(4)(b)(1) is permissive, not mandatory. As a result, because the State argued that a life sentence is mandatory under section 775.084(4)(a)(1), and because the trial court in this case did not indicate whether it believed it could in fact decline to impose a life sentence, we remand for the trial court to reconsider the sentence as within its discretion. See Smith v. State, 574 So.2d 1195, 1197 (Fla. 3d DCA 1991).
Accordingly, we approve in part and quash in part the decision below.
It is so ordered.
SHAW, C.J., and McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part and dissenting in part.
I concur with the portion of the majority opinion which holds that a first-degree felony punishable by a term of years not exceeding life is subject to enhancement under the habitual felony offender statute. However, I disagree with the majority's construction of section 775.084(4), Florida Statutes (1989).
In my view, this Court has no authority to change the word "shall" in section 775.084(4)(a)(1), Florida Statutes (1989), to mean "may." The majority opinion has determined that the legislature, in its enactment of sections 775.084(4)(a) and 775.084(4)(b), adopted "obviously inconsistent language in subsections (4)(a) and (4)(b)." At 271 (Fla. 1992). The majority explains that "[t]here is no reason why the legislature would have mandated life sentences for habitual first-degree felony offenders but left permissive the sentencing for habitual first-degree violent felony offenders. If anything, logic would dictate that the legislature would have intended the reverse." *272 Id. at 271. The error in the majority's construction of this act is that the two subsections are construed as separate and distinct statutes rather than together.
This Court is obligated to construe the words utilized by the legislature in a reasonable and logical manner. I find that there is a reasonable construction that gives intent and purpose to this legislative act without this Court judicially changing the meaning of the word "shall" to "may."
The statute, which needs to be examined in its entirety, reads as follows:
(4)(a) The court, in conformity with the procedure established in subsection (3), shall sentence the habitual felony offender as follows:
1. In the case of a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
(b) The court, in conformity with the procedure established in subsection (3), may sentence the habitual violent felony offender as follows:

1. In the case of a felony of the first degree, for life, and such offender shall not be eligible for release for 15 years.
2. In the case of a felony of the second degree, for a term of years not exceeding 30, and such offender shall not be eligible for release for 10 years.
3. In the case of a felony of the third degree, for a term of years not exceeding 10, and such offender shall not be eligible for release for 5 years.
§ 775.084(4)(a), (b), Fla. Stat. (1989) (emphasis added).
I find that subsections 4(a) and 4(b) should be interpreted to mean that a defendant who is a habitual felony offender and is guilty of a felony of the first degree must be sentenced to life imprisonment in accordance with subsection (4)(a)1. If the defendant is a habitual violent felony offender and is guilty of a felony of the first degree, the defendant must, at least, be sentenced to life imprisonment because he is a habitual offender. However, because the defendant is a habitual violent felony offender and the crime for which the defendant is being sentenced is a violent felony, the trial court has the discretion, under subsection (4)(b)1, to enhance the life sentence to be without parole for fifteen years.
It is clear to me that the legislative intent was to mandate a specific term of years for habitual offenders, regardless of whether the felony involved violence, and that the legislature then granted the trial judge the discretion to enhance that sentence to be without parole for a specific period of time if the defendant is a habitual violent felony offender and has committed a violent felony.
I find the majority has totally rewritten the statute contrary to the legislative intent and the only avenue left to the legislature is to rewrite the statute with further explanatory language.
For the reasons expressed, I dissent.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] We reject Burdick's equal protection claim because we hold that sentencing is permissive for both habitual felony offenders and habitual violent felony offenders.
[3] Burdick does not challenge the portion of the district court decision affirming his convictions and sentences for grand theft and for grand theft of a firearm.
[4] Section 810.02(2), Florida Statutes (1989), provides in part that "[b]urglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084."
[5] We use the terms "punishable by life," "punishable by life imprisonment," and "punishable by a term of years not exceeding life imprisonment," synonymously, as distinguished from a "life felony."
[6] Section 775.084(4)(e) reads in relevant part: "A sentence imposed under this section shall not be subject to the provisions of [the sentencing guidelines]."
[7] State v. Brown, 530 So.2d 51 (Fla. 1988), was released on June 16, 1988. The 1988 amendments to the habitual offender statute were approved by the governor on June 24, 1988. Thus, the most likely scenario is that both the opinion and the statute were released simultaneously.
[8] We note that the habitual offender statute contradicts the principles of the sentencing guidelines. Both sentencing schemes have built-in accommodations for defendants' prior records. One of the stated purposes of the guidelines is "to establish a uniform set of standards to guide the sentencing judge in the sentence decision-making process" and thus "to eliminate unwarranted variation in the sentencing process." Fla.R.Crim.P. 3.701(b). The guidelines accomplish this objective by limiting the discretion of sentencing judges to impose presumptive sentences and only allow departure upon written findings of aggravation or mitigation. Id. 3.701(b)(6). However, by simply classifying a defendant as a habitual offender, the trial judge regains all the discretion the sentencing guidelines were intended to reduce. For instance, in Burdick's case, instead of receiving a recommended guidelines sentence of 5.5 to 7 years, Burdick was sentenced under the habitual offender statute to life in prison without any written finding other than habitual offender status. In essence, the discretion that the legislature took away with one hand in the sentencing guidelines, it gave back with the other in the habitual offender statute.

Nonetheless, we have held that placing limits on the length of sentencing is a legislative function. See Smith v. State, 537 So.2d 982, 987 (Fla. 1989). Clearly this Court's role is to interpret, not to legislate. Accordingly, we can do no more than point out what appears to us to be a serious inconsistency between the two statutory sentencing schemes.
[9] Our holding today applies equally to subsection (4)(a) and subsection (4)(b).