618 So.2d 354 (1993)
Calvin Napoleon WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3959.
District Court of Appeal of Florida, First District.
May 17, 1993.
*355 Nancy A. Daniels, Public Defender, Abel Gomez, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
MICKLE, Judge.
Appellant, Calvin Napoleon White, originally was charged by information with 1) battery on a law enforcement officer (Officer Sackett) (Count I), 2) resisting arrest with violence (Officer Perry) (Count II), and 3) resisting without violence (Count V). Just before trial, the state dropped Count V. Appellant was tried before a jury, which found him guilty of the charges of battery and resisting arrest with violence. We affirm the conviction of battery on an officer. The first issue is whether the trial court reversibly erred in failing to give a requested instruction as to Count II on resisting an officer without violence. We reverse the conviction as to Count II and remand for a new trial. See Ferrell v. State, 544 So.2d 336, 337 (Fla. 1st DCA 1989). Because we believe the trial court might have misapprehended, and therefore limited, the scope of its discretionary sentencing authority, we vacate Appellant's sentences on both charges and remand for the trial court to reconsider its sentencing options in light of our holding and the subsequent decisions discussed, infra. Stewart v. State, 614 So.2d 690 (Fla. 2d DCA 1993); Brown v. State, 613 So.2d 558 (Fla. 2d DCA 1993) (reversing and remanding habitual offender sentence, where appellate court was unable to determine whether trial judge had construed permissive sentencing provision to be mandatory); Smith v. State, 574 So.2d 1195, 1197 (Fla. 3d DCA 1991).
Section 843.01, Florida Statutes (1989), provides in pertinent part:
Whoever knowingly and willfully resists, obstructs, or opposes any officer ... in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the ... officer is guilty of a third-degree felony.
Count II of the information alleged in part:
CALVIN NAPOLEON WHITE ..., on the 18th day of April, 1991, in the County of Leon and the State of Florida, did unlawfully, knowingly, and willfully resist, obstruct or oppose a law enforcement officer, TALLAHASSEE POLICE OFFICER CHUCK PERRY, in the lawful execution of a legal duty, EFFECTING AN ARREST, by offering violence or by doing violence to the officer by GRABBING, SWINGING FISTS, STRUGGLING, FIGHTING, contrary to Section 843.01, Florida Statutes.
Fla.R.Crim.P. 3.510(b) provides as follows:
Upon an indictment or information upon which the defendant is to be tried for any offense the jury may convict the defendant of:
* * * * * *
(b) any offense which as a matter of law is a necessarily included offense or a lesser included offense of the offense charged in the indictment or information and is supported by the evidence. The judge shall not instruct on any lesser included offense as to which there is no evidence.
In Ferrell, we said "[r]esisting an officer without violence is not a necessarily lesser included offense of resisting an officer with violence." 544 So.2d at 337. Instead, resisting without violence "may become a lesser included [offense] depending upon the allegations of the charging document and the proof presented at trial." Id.; Benjamin v. State, 462 So.2d 110 (Fla. 5th DCA 1985). In Ferrell, the charging document alleged the defendant had resisted an officer "by offering or doing violence... by fighting ..." Ferrell requested the trial court to instruct the jury on the offense of resisting an officer without violence. The court declined to do so. The jury was instructed on the offense of resisting with violence, and a verdict of guilty resulted. 544 So.2d at 337. Noting that the evidence at trial included testimony that Ferrell had *356 verbally resisted the officers and had pushed one and tried to break loose from another officer by "thrashing," we found "[t]hese descriptions of appellant's conduct could support the lesser charge of resisting an officer without violence, as could the allegations of the charging document." The cause was reversed and remanded, based on the failure to instruct as to resisting without violence. Id. at 338.
We find the case sub judice is analogous to Ferrell. The state presented evidence that Tallahassee police officers Sackett and Perry were dispatched to the housing project site of a reported beating (possibly armed) of a female victim by a male. Officer Sackett immediately recognized Appellant as an individual who was wanted on several outstanding warrants. To Officer Perry, Appellant matched the description given of the alleged perpetrator of the disturbance.
Officer Perry intended to arrest Appellant, but a foot chase ensued for several blocks until Appellant stopped and turned around, facing the officer, who carried a baton and issued the command to "Get down, Calvin. Get down. You are under arrest." Officer Perry grabbed Appellant and tried to push him down, whereupon Appellant lunged at Perry and "continued to struggle." Pursuant to normal departmental procedures, the officer struck Appellant on the outer thigh. Officer Perry described this encounter with Appellant as follows:
He actually grabbed me and we were struggling. We were going around and 'round, and he was not passively resisting. He was actively resisting and trying to push me away. We were both pretty tired at that time, so he didn't allout attack, but it was an active fight.
In 10-20 seconds, Officer Sackett ran over and tackled Appellant who, at six feet and three inches tall and 265 pounds, is much bigger than either officer. Sackett and Appellant fell to the ground. Perry grabbed an arm, but Appellant "was actively fighting as hard as he could to keep from having the handcuffs put on." A crowd, hostile to the two police officers, had gathered, and Perry temporarily lost his handcuffs. An individual named Eddie Mitchell was cheering Appellant during the pursuit. As Sackett tried to restrain Appellant, Mitchell hit the officer from behind, in back of the head, as Appellant got an arm free and was able to direct short jabs into the officer's groin area. After being struck by Mitchell, Officer Sackett backed off. Appellant got to his feet and struck Sackett again, knocking the officer back into the crowd. The crowd helped Appellant pass through it and yelled "Run, Calvin, run" as he fled. The conviction of battery on a law enforcement officer relates to Appellant's acts upon Officer Sackett and is not contested here.
Officer Perry was left on his back, defending himself against five or six men who were striking him in the head, inflicting a wound that required three stitches. As Sackett attempted to get the men off Perry, a back-up officer arrived with a trained dog, which he released and followed into the crowd. Believing the situation was under control, Sackett pursued Appellant into a nearby apartment and engaged in a prolonged physical struggle.
At trial, the defense produced two witnesses. Frederick Jackson had run outside from an apartment "to see what the commotion was" and saw the crowd. He testified that the officers had Appellant on the ground and were hitting him with billy sticks. Eddie Mitchell pulled the officers away from Appellant. Jackson then saw Appellant run from the scene and enter Jackson's sister's unlocked apartment. At the time of the incident, Jackson neither knew Appellant nor knew anything about him.
Toya Strong witnessed the incident from her porch and saw the police chasing Appellant. She testified that after Appellant stumbled, an officer fell atop him and the two "tussled for a while" until an officer with a dog arrived. She said the officers hit Appellant more than once with "the police sticks that they have on their side." She thought Appellant once said, "All right, you've got me" or something similar as he lay on his back. After Appellant got *357 up and began running away, an officer with his gun out pursued him.
Appellant concedes the state's evidence could be viewed as establishing the use of violence against Officer Sackett. He challenges only the refusal to give the requested instruction relating to his conduct toward Officer Perry. We are compelled to agree with Appellant that the evidence, if accepted by the jury, could support a verdict of resisting without violence. In reversing a conviction and remanding for a new trial based on the trial court's failure to give an appropriate jury instruction in Solomon v. State, 436 So.2d 1041 (Fla. 1st DCA 1983), we stated:
A defendant is entitled to a jury instruction on the theory of his defense if there is evidence in the record to support it, regardless of how weak or improbable it may be.
See Eberhardt v. State, 550 So.2d 102, 105 (Fla. 1st DCA 1989), rev. den., 560 So.2d 234 (Fla. 1990) (defendant was entitled to jury instruction where any trial evidence, however "marginal," supported his theory of defense); Holley v. State, 423 So.2d 562, 564 (Fla. 1st DCA 1982). There is evidence indicating Appellant responded to Officer Perry in a non-violent manner. Because the omitted instruction involves the next lesser crime, it was per se reversible error not to give the instruction here. State v. Abreau, 363 So.2d 1063 (Fla. 1978); Tice v. State, 569 So.2d 1327, 1328 (Fla. 2d DCA 1990).
Appellant's eventual sentence may very well differ as a result of our holding. Our review of the sentencing hearing transcript indicates some dispute between counsel involving the extent of the trial court's sentencing authority. A number of subsequent decisions, discussed infra, have clarified the applicable law. The sentencing colloquy suggests the trial court may have misapprehended, and therefore limited unnecessarily, its broad discretion in sentencing Appellant. Accordingly, the interests of justice require both sentences to be vacated so that the trial court can reconsider the available sentencing options. Henry v. State, 581 So.2d 928, 929 (Fla. 3d DCA 1991). The trial court found Appellant to be qualified as a habitual violent felony offender and exercised its discretion under section 775.084(4)(c) to classify and sentence him as such pursuant to section 775.084(1)(b) and (4)(b), Florida Statutes (1989). See Johnson v. State, 612 So.2d 689 (Fla. 1st DCA 1993); Grimes v. State, 616 So.2d 996 (Fla. 1st DCA 1992). Cf. King v. State, 597 So.2d 309, 314-15 (Fla. 2d DCA) (en banc) (finding trial court lacks discretion in determination of habitual offender classification, but finding sentencing as habitual offender is discretionary), rev. den., 602 So.2d 942 (Fla. 1992). Both offenses of which Appellant was convicted are felonies of the third degree. See sections 784.07(2)(b) and 843.01, Florida Statutes (1989). Ordinarily, a person convicted of a third-degree felony may be punished "by a term of imprisonment not exceeding 5 years." Section 775.082(3)(d), Florida Statutes (1989). However, pursuant to the enhancement provisions of the habitual violent offender statute:
(b) The court, in conformity with the procedure established in subsection (3), may sentence the habitual violent felony offender as follows:
* * * * * *
3. In the case of a felony of the third degree, for a term of years not exceeding 10, and such offender shall not be eligible for release for 5 years.
Section 775.084(4)(b)(3), Florida Statutes (1989). Having determined to sentence Appellant as a habitual violent felony offender, the trial court retained the discretion to impose a sentence for each count for any term of years up to the 10-year maximum, but not less than the 5-year minimum mandatory. King; Lowe v. State, 605 So.2d 505, 507 (Fla. 5th DCA 1992); Knickerbocker v. State, 604 So.2d 876 (Fla. 1st DCA 1992).
Under the sentencing guidelines, Appellant's case called for a sentence of 12 to 17 years. The sentencing transcript suggests the state relied on Branam v. State, 554 So.2d 512, 513-14 (Fla. 1990), for the proposition that when the statutory minimums or maximums preclude sentencing within the *358 recommended guidelines sentence, then the trial court must sentence either concurrently or consecutively, depending on the posture of the case, to attain as closely as possible the sentence urged by the guidelines. The prosecutor emphasized to the trial court that the habitual violent offender sentencing provisions were mandatory, citing Donald v. State, 562 So.2d 792 (Fla. 1st DCA 1990), rev. den., 576 So.2d 291 (Fla. 1991), disapproved, 594 So.2d 291 (Fla. 1992). The state requested imposition of terms of imprisonment, to run consecutively, with minimum mandatory terms, so that the sentence in fact would achieve at least the bottom guideline range. The trial judge expressed an initial inclination to sentence Appellant to imprisonment for 10 years (Count I), with a consecutive sentence of 2 years (Count II), which terms would coincide with the 12-year floor of the guidelines recommended range. Given the fact that the trial court had determined to sentence pursuant to the habitual violent offender statute, this initial sentence would not have met the requirements enunciated in King, 597 So.2d at 314-15, Knickerbocker, 604 So.2d at 878, and Lowe.
The state asserted that the language "such offender shall not be eligible for release for 5 years" required the imposition of a 5-year minimum mandatory sentence as to Count II, and nothing less. See section 775.084(4)(b)(3), Florida Statutes (1989). The trial court subsequently imposed the terms of imprisonment challenged on appeal: 10 years on Count I, with a consecutive sentence of 5 years followed by 5 years of probation on Count II. Neither the trial court nor the judgment and sentence specified any minimum mandatory sentence. As in Cotton v. State, 588 So.2d 694, 695 (Fla. 3d DCA 1991), aff'd, 595 So.2d 957 (Fla. 1992), the record is not clear as to whether the trial court based Appellant's eventual sentence on the state's arguments and the belief that it lacked any broader discretion in sentencing.
Appellant and the state acknowledge that several key decisions rendered subsequent to Appellant's sentencing invoke section 775.084 and address the specific sentencing issues disputed by counsel. Those issues are 1) whether the statutory language is permissive or mandatory, 2) whether the so-called minimum mandatory provisions of section 775.084(4)(b)(1) through (4)(b)(3) must be imposed, and, 3) if the minimum mandatories must be included in a habitual violent felony offender's sentence, what considerations determine whether they are to be imposed concurrently or consecutively. Irrespective of the eventual outcome of further proceedings as to Count II, Appellant must be resentenced on Count I. Accordingly, we wish to clarify the issues presented at the first sentencing.
Appellant and the state acknowledge on appeal that under the applicable version of the habitual violent offender statute, Appellant's sentence is expressly exempted from the sentencing guidelines provisions of section 921.001, Florida Statutes (1989). See Section 775.084(4)(e); Holley v. State, 577 So.2d 624, 625 (Fla. 1st DCA 1991); Owens v. State, 560 So.2d 1260 (Fla. 1st DCA 1990). We find the following language in Thompson v. State, 558 So.2d 111, 112 (Fla. 3d DCA 1990), instructive as to those instances, like Appellant's sentencing hearing, where the trial court sentencing a habitual offender aims to approximate the bottom range of the defendant's guidelines recommendation.
Where, as here, the trial court has decided to impose the guideline sentence, but the guideline sentence exceeds the maximum legal sentence on each count, the trial court must impose consecutive sentences in order to come as close as possible to the guidelines scoresheet recommendation. [citation to Branam]
Subsequent to both Appellant's sentencing and the publication of Branam and Thompson, the supreme court decided Burdick v. State, 594 So.2d 267, 271 (Fla. 1992), which holds "that sentencing under sections 775.084(4)(a)(1) and 775.084(4)(b)(1) is permissive, not mandatory." Thus, Burdick applies equally to the habitual felony and habitual violent felony offender provisions. 594 So.2d at 271 n. 9. Donald has been disapproved, to the extent its language *359 is inconsistent with Burdick. See State v. Washington, 594 So.2d 291 (Fla. 1992). In addition to the material distinction in Thompson that the trial court "decided to impose the guideline sentence," whereas the trial court in the instant case did not, we note that Branam, on which the state premised its suggestion that the trial court was bound to achieve a particular sentencing result, did not involve sentencing under the habitual offender statute. 554 So.2d at 512; See State v. Cook, 571 So.2d 22 (Fla. 2d DCA 1990). Given the trial court's decision to sentence Appellant as a habitual violent felony offender, we believe Burdick affords greater leeway in sentencing than was either suggested by the state or understood by the trial court. See Ellis v. State, 608 So.2d 514, 515 (Fla. 5th DCA 1992); Wright v. State, 599 So.2d 179 (Fla. 2d DCA 1992).
The state correctly points out that the question certified in Burdick was expressly limited to whether the maximum sentence of life for a non-violent felon is mandatory or permissive. It does not necessarily follow from Burdick that the minimum sentence for a defendant sentenced pursuant to the habitual violent felony offender statute is permissive, and we have not so held. See Knickerbocker, 604 So.2d at 878; see also King, 597 So.2d at 316. In Knickerbocker, the charges against the defendant, a habitual violent felony offender, included two felonies of the first degree (kidnapping and armed burglary). The applicable provision of section 775.084(4), Florida Statutes (Supp. 1988), stated:
(b) The court, in conformity with the procedure established in subsection (3), may sentence the habitual violent felony offender as follows:
1. In the case of a felony of the first degree, for life, and such offender shall not be eligible for release for 15 years.
In our directions for Knickerbocker's resentencing, we held as follows:
[S]hould the trial court again decide to sentence appellant as an habitual violent felony offender for the burglary and kidnapping convictions, it is obliged to impose 15-year mandatory minimum sentences.

604 So.2d at 878. (Emphasis added.) The Second District Court's decision in King is consistent with our interpretation that the trial court, having determined to sentence Appellant as a habitual violent felony offender, has the discretion to impose a sentence of "any term of years not less than the minimum mandatory nor more than the maximum sentence provided in subsections 775.084(4)(b)(1), (2) and (3)." 597 So.2d at 315. (Emphasis added.) See Sims v. State, 605 So.2d 997 (Fla. 2d DCA 1992) (where trial court decides to sentence defendant as habitual violent felony offender, minimum mandatory sentence must be included in sentence); Lowe, 605 So.2d at 507 (relying on King in holding that habitual violent felony offender's sentence must include minimum mandatory term); Brousseau v. State, 590 So.2d 997 (Fla. 5th DCA 1991). Contra Green v. State, 615 So.2d 823 (Fla. 4th DCA 1993) (finding habitual violent felony offender sentencing is discretionary, so that imposition of minimum mandatory term is not required). Appellant has not supplied any authority to indicate to us that the minimum mandatory sentencing provisions of section 775.084(4)(b)(3) are merely permissive. Noting the lack of minimum mandatory provisions in the habitual felony offender provisions in section 775.084(4)(a)(1)-(3), we believe our interpretation of the minimum mandatory provisions in the habitual violent felony offender statute, section 775.084(4)(b)(1) through (4)(b)(3), as being, in fact, mandatory, is consistent with the legislative intent to distinguish habitual offenders from habitual violent offenders and to further enhance the latter's sentences. Accordingly, if the trial court again decides to sentence Appellant pursuant to the habitual violent felony offender provisions, the sentence must include a minimum mandatory statutory term of years. We find this interpretation comports with the legislative intent to enact section 775.084 as a sentence enhancement statute.
Where a statute like section 775.082(3)(d), Florida Statutes (1989), which prescribes the penalty for a defendant's *360 offenses, lacks a provision for minimum mandatory sentencing, the supreme court has held that "minimum mandatory sentences imposed for the crimes ... committed arising out of the same criminal episode may only be imposed concurrently and not consecutively." Daniels v. State, 595 So.2d 952, 954 (Fla. 1992); Stuckey v. State, 603 So.2d 727 (Fla. 4th DCA 1992); Brown v. State, 599 So.2d 132 (Fla. 2d DCA 1992). This precludes the so-called stacking of such sentences under the specific circumstances quoted above. Palmer v. State, 438 So.2d 1, 4 (Fla. 1983). Even if two victims are involved, minimum mandatory sentences must be imposed concurrently, so long as the offenses were committed during a single criminal episode. Staten v. State, 600 So.2d 1269 (Fla. 2d DCA 1992). Consecutive minimum mandatory sentences are permissible where separate and distinct criminal offenses have occurred. Woods v. State, 615 So.2d 197 (Fla. 1st DCA 1993); Newton v. State, 603 So.2d 558 (Fla. 4th DCA 1992) (affirming imposition of consecutive minimum mandatory sentences where defendant committed three separate and distinct offenses). We refrain from determining whether the evidence in the instant case demonstrates separate and distinct criminal offenses rather than crimes arising out of the same criminal episode. For the benefit of the trial court, however, we offer the following guidelines from Woods:
In determining whether two separate offenses have occurred, the court must consider whether separate victims are involved, whether the crimes occur in separate locations, and whether there has been a temporal break between the incidents.
615 So.2d at 199. See State v. Boatwright, 559 So.2d 210, 211 (Fla. 1990). We note that in Newton, it was inconsequential that the crimes occurred during the same sequence of events where the defendant sought to avoid arrest. The offenses still were properly deemed "separate and distinct." 603 So.2d at 561.
For the reasons stated above, we AFFIRM the conviction as to Count I; REVERSE the conviction as to Count II and REMAND for a new trial; and VACATE the sentences as to Counts I and II.
WOLF, J., and JORGENSON, J.R., Associate Judge, concur.