DAVIS, Judge.
The State of Florida appeals a final summary judgment holding section 16, Chapter 92-178, Laws of Florida, unconstitutional as applied to all providers of health care services except radiation therapy. The lower court held that the title to chapter 92-178 was unconstitutionally defective for failure to provide adequate notice and for being affirmatively misleading as to the fee cap imposed by section 16 of the act on providers of designated health services other than providers of radiation therapy. We agree that section 16 is unconstitutional because the title is defective, and affirm that portion of the final judgment; however, we conclude that the trial court erred in rewriting section 16 in an attempt to sever out providers of designated health services other than radiation therapy, and we reverse that portion of the final summary judgment. We hold that the title defect invalidates section 16 in its entirety. Therefore, we affirm in part and reverse in part.
The title to chapter 92-178 provides:
An act relating to medical practice; repealing s. 458.331(l)(gg), F.S., relating to grounds for disciplinary action with respect to a health care provider who makes certain referrals; repealing s. 459.015(l)(k), F.S., relating to disciplinary grounds for osteopaths; repealing s. 460.413(l)(k), F.S., relating to disciplinary grounds for chiropractors; repealing s. 461.013(1)0), F.S., relating to disciplinary grounds for podiatrists; repealing s. 463.016(l)(m), F.S., relating to disciplinary grounds for optometrists; repealing s. 466.028(l)(n), F.S., relating to disciplinary grounds for dentists; creating the “Patient Self-Referral Act of 1992”; providing legislative intent; providing definitions; prohibiting certain financial arrangements between referring health care providers and providers of health care services; providing for grounds for disciplinary action; providing penalties; providing an exception for specified radiation therapy facilities; providing for repeal; prohibiting kickbacks; prohibiting markups on charges for services rendered by another entity; requiring licensure of health care services; creating s. 407.60, F.S.; directing the Health Care Cost Containment Board to conduct an annual study of charges for radiation therapy procedures; empowering the Health Care Cost Containment Board to establish fees for radiation therapy procedures upon a finding that charges for such procedures exceed a specified amount; establishing a maximum fee schedule for radiation therapy procedures; providing penalties for exceeding a fee schedule; creating s. 407.61, F.S.; empowering the Health Care Cost Containment Board to conduct studies relating to health care provider referral patterns and to make recommendations to the Legislature and the Governor; authorizing the Health Care Cost Containment Board to require submission of data; specifying data elements; requiring a report; providing for repeal; amending s. 455.25, F.S., relating to disclosure of financial interests; providing a penalty; providing an appropriation; providing applicability; providing an effective date.
It is undisputed that the title, although giving a virtual index to all of the other provisions of the enactment, does not list the provisions of section 16, which provides:
Effective July 1, 1992, a fee schedule is imposed on all providers of designated health services. The fee schedule shall apply to all persons who receive such services who are not eligible for benefits under Title XVIII OR XIX of the Social Security Act and shall be limited to no more than 115 percent of the Medicare limiting charge for nonparticipating physicians for such services, including technical and professional components, as determined by the Secretary of the United States Department of Health and Human Services. The professional and technical charges for such procedures shall be increased or decreased for each year thereafter on an annual basis in accordance with the percentage adjustments made by the Medicare program for these procedures for nonpartieipating physicians. Any per *1130 son who charges more than the fees authorized by this section shall be subject to an administrative fine not to exceed $5,000 per violation, to be fixed, imposed and collected by the appropriate licensing board. The application of this provision shall not apply to group practices as defined in this act or hospitals licensed pursuant to chapter 395, Florida Statutes.
The State argues that the title to section 16 is nonetheless valid because not every provision is required to be listed in the title.
The Florida Constitution requires the legislature to briefly state the subject of the law in the title. Article III, section 6, Florida Constitution, provides that “[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.” The purpose of this requirement is to put interested persons on notice of the need to inquire further into the particular provisions of the legislation. “The subject of a law is that which is expressed in the title, Rouleau [v. Avrach, 233 So.2d 1,] 4; Ex Parte Knight, 52 Fla. 144, 41 So. 786 (1906), and it may be as broad as the legislature chooses provided the matters included in the law have a natural and logical connection.” State v. Lee, 356 So.2d 276, 282 (Fla.1978). All matters germane to, or reasonably connected with, the expressed subject may be included without being individually listed in the title. The test is whether the provision is a necessary incident to the subject expressed in the title or tends to make effective or to promote the object of the legislation. In determining the constitutionality of a statute against a challenge alleging a defective title, a presumption exists in favor of the validity of the statute. State ex rel. Flink v. Canova, 94 So.2d 181, 184 (Fla.1957) (en banc).
As the Florida Supreme Court cogently explained, however, in Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843 (1945):
The numerous cases decided by this court show that a title to an act which states in brief and general terms the real subject of the act, without any attempt to index the contents of it, is more apt to result in the upholding of the act as a whole than where long titles are resorted to ... Sometimes titles are so long that it is difficult for this court to spell out from the title what is the real subject of the act. And quite frequently an effort to index the act in the title results in what is called a ‘restrictive title,’ which restricts the scope of the act to the matters expressly mentioned, on the theory that the title indicated that the legislature did not intend to deal with any other matters, and that to hold otherwise would make the title misleading to the members of the legislature and to the public.
In arguing the constitutional sufficiency of the subject title, the State relies primarily upon City of Pensacola v. Shevin, 396 So.2d 179 (Fla.1981) in which the Florida Supreme Court upheld the validity of a title containing a detailed list of the contents of an act, although two sections of the statute had been omitted from the title. The title in City of Pensacola, however, is distinguishable from the title in the instant case in two ways.
First, the omitted sections in that case were clearly embraced within the subject as defined by broader language contained in the title, relating to the newly created civil service system. Similarly, in Town, of Monticello v. Finlayson, supra, the court held that a statutory provision for imposition of interest on assessments for municipal improvements was within the subject of the title. That title indicated that the statute authorized the issuance and sale of bonds in connection with local improvements. The court reasoned that the title was not defective by virtue of the failure to expressly mention interest, because municipal bonds always bear interest. In both cases, the provision to which there had been an objection was encompassed by a more general reference in the title.
Second, the title in City of Pensacola contained no language which would have affirmatively misled someone reading the title to believe that the act contained no provisions concerning the contents of the two omitted sections (relating to the pension rights of employees discharged for cause). In contrast, in the instant case, the title not only fails to refer to the provisions of section 16, or to contain broad language permitting one *1131 to conclude that a fee cap such as was imposed in section 16 on all providers of designated health services was encompassed by the legislation, it also contains the following series of clauses, which we find affirmatively misleading as to the possibility that any fee cap other than the one on radiation therapy services which is so specifically referenced was being imposed: “directing the Health Care Cost Containment Board to conduct an annual study of charges for radiation therapy procedures; empowering the Health Care Cost Containment Board to establish fees for radiation therapy procedures upon a finding that charges for such procedures exceed a specified amount; establishing a maximum fee schedule for radiation therapy procedures; providing penalties for exceeding a fee schedule ...”
In Mayo v. National Truck Brokers, Inc., 220 So.2d 11 (Fla.1969) the court invalidated an act to the extent it increased license renewal fees, because the title stated the act related to “application fees, certificate fees, permit fees, and filing fees” and was therefore affirmatively misleading by omission of license renewal fees. Similarly, in County of Hillsborough v. Price, 149 So.2d 912 (Fla. 2d DCA 1963) the title stated that the act authorized the County “to dispose of stray untagged vicious dogs.” The appellate court agreed with the trial court’s assessment that the subject of the law as expressed in the title was stray untagged vicious dogs, and that the law was unconstitutional for lack of title notice as applied to provisions governing vicious dogs which were neither strays nor untagged. Again, in Christensen v. Commercial Fishermen’s Ass’n, 137 Fla. 248,187 So. 699 (1939), the title of the disputed local act limited its application to the inside salt waters of Martin County and to haul, seine or drag nets. The Florida Supreme Court found that “inside waters” and “haul seine or drag net” were words with definite meanings as used in connection with the fishing industry. Therefore, the provision prohibiting fishing with any kind of net except a common case net, within a radius of two miles of the center of St. Lucie Inlet, in either the inside or outside waters of Martin County, was unconstitutional because it was beyond the scope of the title.
In this case, the trial court ruled that the title to chapter 92-178 was affirmatively misleading as to the fee cap imposed in section 16, except as to radiation therapy providers. We agree that the title is affirmatively misleading. The title expressly refers to the imposition of a fee cap on radiation therapy providers only, creating the appearance that no other fee caps are encompassed within the act. See Mayo v. National Truck Brokers, Inc., supra; Christensen v. Commercial Fishermen’s Ass’n, 137 Fla. 248, 187 So. 699 supra; County of Hillsborough v. Price, supra. Moreover, the title expressly refers to certain specific health care providers: physicians licensed under chapter 468, osteopaths, chiropractors, podiatrists, optometrists and dentists, as well as providers of radiation therapy. The title refers also to providers of “health care services,” but does so only in limited contexts: prohibiting certain financial arrangements between such providers and their referring physicians, and requiring li-censure of health care services providers. Neither of those provisions would place the appellees, members of the Legislature, or other citizens of Florida on notice that unnamed providers of unspecified health care services were being made subject to a fee cap as provided in section 16. See Rouleau v. Avrach, 233 So.2d 1 (Fla.1970) (invalidating portion of statute which imposed a municipal license tax because the title only provided notice that the statute concerned occupational taxes “in counties”).
The remaining issue, presented by providers of radiation therapy services, is whether the trial court erred by rewriting section 16, thereby rendering it applicable to providers of radiation therapy services, but not providers of other designated health services. We find that the trial court erred in holding that section 16 could remain effective as applied to providers of radiation therapy services alone. The fee cap imposed in section 16 is expressly applicable to “providers of designated health services.”[1] Section *1132 7(3)(d), Chapter 92-178, Laws of Florida, defines “designated health services” as “clinical laboratory services, physical therapy services, comprehensive rehabilitative services, diagnostic imaging services, and radiation therapy services.” By its ruling, the trial court has rewritten the law to redefine “designated health services” as used in section 16, rather than excising an offending provision. The State correctly conceded at oral argument that such rewriting is not permitted. In State ex rel. Limpus v. Newell, 85 So.2d 124 (Fla.1956) (en banc), the Florida Supreme Court addressed the constitutionality of a statute amending the elections laws concerning, in pertinent part, the qualifying dates for candidates for state and county offices. As amended the statute provided an earlier qualifying date for candidates for county offices in counties within a specified population range. The supreme court held that there was a reasonable basis for theorizing that a candidate for office in a larger county would need additional time to canvass the citizens of that county. However, the court held, the statute contained an unreasonable and arbitrary classification because there was at least one county larger than those to which the law applied which was excluded by its terms. First the court held that the statute was unconstitutional as applied to some counties, but not all counties. Then the court stated that it could not reinterpret the statute so as to apply it only to the counties which were constitutionally covered by the law, because “[s]uch action would be judicial legislation of the most rank order.” Id. at 127.
The State ex rel. Limpus v. Newell court next analyzed whether the unconstitutional provision (in its entirety) was severable from the remainder of the chapter. Id. at 128. The fundamental rule is that the constitutional portion of a statute may remain valid after the unconstitutional portion has been excised, so long as the unconstitutional provision is properly severable from the remainder of the statute. “The severability of a statutory provision is determined by its relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent.” Eastern Air Lines, Inc. v. Dep’t of Revenue, 455 So.2d 311 (Fla.1984), appeal dismissed mem., 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985) (severing an entire section of a statute). We conclude that section 16 may properly be severed in its entirety from the remainder of chapter 92-178 under this test. See also High Ridge Mgmt. Corp. v. State, 354 So.2d 377 (Fla.1977) (deleting two subsections in their entirety to remove language regarding rating of nursing homes which was an unlawful delegation of legislative authority); Presbyterian Homes of Synod of Florida v. Wood, 297 So.2d 556, 559 (Fla.1974) (invalidating in their entirety three subsections of a statute); Cramp v. Board of Instruction of Orange County, 137 So.2d 828 (Fla.1962) (excising one clause of Florida’s loyalty oath); Kass v. Lewin, 104 So.2d 572 (Fla.1958); Harris v. Bryan,. 89 So.2d 601 (Fla.1956).
Accordingly, we AFFIRM IN PART and REVERSE IN PART, striking section 16, chapter 92-178, Laws of Florida, in its entirety.
ALLEN, J., and SMITH, Senior Judge, concur.

. The title reference to a fee cap on radiation therapy services alone clearly addressed a separate provision enacted separately in section 11 of the act.