824 So.2d 137 (2002)
Kelly TORMEY, Petitioner,
v.
Michael W. MOORE, et al., Respondents.
No. SC97143.
Supreme Court of Florida.
July 11, 2002.
*138 John C. Schaible, Florida Institutional Legal Services, Inc.; Joseph S. Jackson, University of Florida, Levin College of Law, Gainesville, FL, for Petitioner.
Susan A. Maher, Deputy General Counsel, and Carolyn J. Mosley, Assistant General Counsel, Department of Corrections, Tallahassee, FL, for Respondent.
PER CURIAM.
Kelly Tormey petitions this Court for writ of mandamus.[1] We hereby grant the petition, holding that the single subject clause of the Florida Constitution was violated when a new provision enhancing the punishment for all murderers was added to "the Law Enforcement Protection Act," which originally only enhanced punishment for offenses committed against law enforcement personnel.

FACTS
Ms. Tormey was convicted of armed robbery and second-degree murder for offenses which occurred on May 18, 1990. She received concurrent twenty-year sentences. Under the version of the provisional credits statute which purportedly went into effect on January 1, 1990, she was deemed ineligible for provisional credits due to her conviction for murder. She was, however, deemed eligible for thirty days of emergency gain time as a Group 3 Offender, as explained in Gomez v. Singletary, 733 So.2d 499 (Fla.1998) (inmates entitled to overcrowding gain time based on statutes in effect at the time of the offense).[2] Tormey filed a writ petition in this Court contesting the number of days *139 she was entitled to receive. Shortly before oral argument was scheduled, however, Tormey was released from prison, having completed her sentence without the award of overcrowding credits. Nevertheless, since mootness does not destroy a court's jurisdiction when, as here, the questions raised are of great public importance or are likely to recur, we decline to grant the Department of Corrections' motion to dismiss this case. See Holly v. Auld, 450 So.2d 217 (Fla.1984).

DISCUSSION
The Florida Constitution contains a provision which is known as the single subject rule. That provision is included in article III, section 6 and provides as follows:
Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.
Art. III, § 6, Fla. Const. The single subject clause addresses two parts of the law: (1) the body of the law; and (2) the title of the law.
The first part of the single subject rule simply requires that only one subject be addressed in the law. The purpose for the constitutional prohibition against a plurality of subjects in a single legislative act is to prevent a single enactment from becoming a "cloak" for dissimilar legislation having no necessary or appropriate connection with the subject matter. State v. Lee, 356 So.2d 276, 282 (Fla.1978).
The second part requires that the subject be briefly expressed in the title. The purpose of the title requirement is to put people who may be subject to the law, other lawmakers, and other interested persons on notice of the nature and substance of the law and, at a minimum, inform them of the need to further inquire into the specifics of the legislation. See State v. Physical Therapy Rehabilitation Center of Coral Springs, Inc., 665 So.2d 1127, 1130 (Fla. 1st DCA 1996). The title may identify a broad or restricted subject, but it must be accurate and not misleading. Id.
As mentioned above, Tormey has been deemed a Group 3 Offender (receiving only thirty days of credits). If, however, Tormey were deemed eligible for provisional credits, she would be entitled to many more days of credits as a Group 5 Offender.[3] The Department of Corrections (the Department) has deemed Tormey ineligible for provisional credits (and thus placed her in Group 3) because she was convicted of murder. All persons convicted of murder are ineligible for provisional credits pursuant to an amendment made to the provisional credits statute by chapter 89-100, Laws of Florida, which was entitled "the Law Enforcement Protection Act." Tormey argues, however, that chapter 89-100 is unconstitutional under the descriptive title part of the single subject requirement of the Florida Constitution because the title of the act implied that the act enhanced penalties for crimes against law enforcement personnel, while it actually covered murder offenses committed against other persons as well. She also argues that chapter 89-100 violates the first part of the single subject clause because the body of the act contains more than one subject.
Tormey asserts that this case is a classic example of logrolling extraneous material into an unrelated act. The bill originally provided for enhanced penalties *140 for only those convicted of certain enumerated violent offenses against law enforcement personnel. During the amendment process, the Legislature passed a new provision mandating that persons convicted of murder or attempted murder of any person would be ineligible for provisional credits. Tormey claims this amendment violated the single subject clause.
The Department responds that, contrary to the Legislature's assertion in chapter 89-100 that it was creating "The Law Enforcement Act," the actual title of the act is "An Act Relating to Criminal Penalties." The Department further argues the fact that the title mentions every section amended except the provisional credits general murder exclusion at issue here is not cause to strike down the act, because in City of Pensacola v. Shevin, 396 So.2d 179 (Fla.1981), this Court concluded that the omission of two sections from the act's otherwise all-inclusive list of sections amended did not render the act unconstitutional.
Additionally, the Department argues, this is not the same type of situation this Court found itself faced with recently in Heggs v. State, 759 So.2d 620 (Fla.2000), and State v. Thompson, 750 So.2d 643 (Fla.1999), in which the Legislature "logrolled" three unpopular domestic violence bills into the popular career criminal bill. There is no evidence that the Legislature could not have independently passed legislation prohibiting murderers from receiving provisional credits.
The key to the resolution of this case is the true title of the act in question. As noted above, the Department asserts that the title to the act is "An act relating to criminal penalties." Indeed a portion of the title does include that phrase. Nevertheless, it is quite clear from a reading of the entire title that the Legislature intended and in fact named the act the "Law Enforcement Protection Act." While the beginning of the act indicates that it is "an act relating to criminal penalties," it then goes on to significantly narrow and restrict the types of criminal penalties addressed in the act. Thus, an honest reading of the title must result in the conclusion that this act is an act which provides for increased "criminal penalties" for persons who commit criminal offenses against law enforcement personnel and only law enforcement personnel. Further, the Legislature clearly restricted its intent to the protection of law enforcement personnel in the preamble to the act. The Legislature specifically found that since officers were constantly at risk and many had been assaulted or killed, it wished to increase the severity of the punishment for persons who commit violent offenses against law enforcement personnel and thereby discourage persons from committing such offenses against them.[4] Consequently, the true subject of *141 the act is enhanced penalties for persons who commit crimes against law enforcement personnel. While all matters germane to, or reasonably connected with, the expressed subject may be included, the test is whether the provision is a necessary incident to the subject expressed in the title or tends to make effective or promote the object of the legislation. See State v. Physical Therapy Rehabilitation Center of Coral Springs, Inc., 665 So.2d 1127 (Fla. 1st DCA 1996); see also Burch v. State, 558 So.2d 1, 4 (Fla.1990) ("Each of these areas bear a logical relationship to the single subject of controlling crime, whether by providing for imprisonment or through taking away the profits of crime and promoting education and safe neighborhoods.").
As was the case in Physical Therapy, we must conclude that the provisional credits general murder exclusion is not reasonably connected with the expressed subject because that subject is criminal penalties for persons who commit crimes against law enforcement personnel. That being the case, the act fails because it addresses more than one subject and because the title and the exhaustive indexing of every section except the contested section make the title "affirmatively misleading." Physical Therapy, 665 So.2d at 1131; see also Mayo v. National Truck Brokers, Inc., 220 So.2d 11 (Fla.1969) (invalidating an act as "affirmatively misleading" to the extent that it increased license fees because the title to the act specified and listed the types of fees which would be increased and did not include license fees); Christensen v. Commercial Fishermen's Ass'n, 137 Fla. 248, 187 So. 699 (1939) (invalidating portion of act as beyond the scope of the title because it purported to outlaw certain types of nets within a two-mile radius while title of act implied that it would outlaw such nets only within "inside waters" which had a definite and different meaning); County of Hillsborough v. Price, 149 So.2d 912 (Fla. 2d DCA 1963) (prohibiting the disposal of the Prices' vicious dog because while the act authorized the county to dispose of stray untagged vicious dogs, the Prices' dog was not stray or untagged).
As both parties admit, the original bill contained the same title, the same index of sections, and the same preamble. During *142 the amendment process, a provision prohibiting the award of provisional credits to any person who committed a murder or attempted murder against any individual (not just law enforcement personnel) was added to the bill, yet there was no change in the expression of the Legislature's intent, the title, or the index,[5] or any change in the legislative analysis provided for the amended bill. This action contains the very evil sought to be prevented by the single subject requirement. See Rouleau v. Avrach, 233 So.2d 1, 3 (Fla.1970). In other words, we must conclude that the provisional credits general murder exclusion was "logrolled" into the act. Further, even if the provision could have passed as separate legislation, that is not the test. If a provision in an enactment relates to a different subject, as this one clearly does, the Legislature must enact it separately. Accordingly, we conclude that chapter 89-100 violates both parts of the single subject clause.
We agree with the parties that the proper remedy for this violation is to sever the part of the act that was not properly identified in the title. See Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla. 1974); see also Heggs v. State, 759 So.2d 620, 629 (Fla.2000) (reaffirming Wood rule). The rule set forth in Wood indicates:
An unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining valid provisions, that is, if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and bad features are not inseparable and the Legislature would have passed one without the other; and an act complete in itself remains after the invalid provisions are stricken.
Wood, 297 So.2d at 559. The act, as redacted, meets the Wood test and thus, the remaining provisions survive. In other words, since the act is entitled the Law Enforcement Protection Act and all the provisions except the contested provision clearly relate to that subject, removal of the offending provision would not, in any way, hinder the accomplishment of the valid provisions concerning law enforcement protection.
We next address the time-frame or window period in which the provisional credits general murder prohibition is void. This question is answered by determining when the single subject violation was cured. The general rule is that a single subject violation is cured when the Legislature reenacts the provision as part of the biennial adoption of the Florida Statutes. See Trapp v. State, 760 So.2d 924 (Fla. 2000); Salters v. State, 758 So.2d 667 (Fla. 2000) (both concluding that while the subject provisions had been amended before the biennial adoption of the Florida Statutes, a mere amendment would not suffice to cure the violation). Only a complete reenactment of both subjects of an act which improperly contained two subjects for the purpose of curing the single subject violation would cure the violation before biennial readoption of the Florida Statutes, *143 as was done in Martinez v. Scanlan, 582 So.2d 1167, 1172 (Fla.1991).
The relevant reenactment occurred and became effective on May 2, 1991. See ch. 91-44, § 1, at 305-06, Laws of Fla. That being the case, only those persons who were excluded from receiving provisional credits because of the general murder exclusion created by chapter 89-100, section 4, who committed their offenses on or after January 1, 1990, but before May 2, 1991, will be entitled to relief under this decision. See ch. 89-100, § 4, at 256, Laws of Fla. (codified at § 944.277(1)(i), Fla. Stat. (1989 Supp.1992)).
Since Tormey's relevant offense was committed during that window period, she is entitled to relief as a Group 5 Offender pursuant to this Court's decision in Gomez.
It is so ordered.
SHAW, HARDING, WELLS, PARIENTE, LEWIS, and QUINCE, JJ., concur.
ANSTEAD, C.J., concurs in result only.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(8), Fla. Const.
[2] In Gomez, the Department of Corrections provided proposed relief charts for six "offender groups," which are groups of inmates categorized by offense type, program eligibility and offense date. Only three groups (3, 4 and 5) were actually represented by a petitioner in Gomez, and, therefore, this Court declined to address the other groups (1, 2, and 6). The remaining groups were discussed in this Court's recent decision in Winkler v. Moore, 27 Fla. L. Weekly S373, ___ So.2d ___, 2002 WL 717819 (Fla. Apr. 25, 2002). Members of Offender Group 3 include offenders whose offenses were committed on or after June 2, 1986, but before June 17, 1993, and who are eligible for emergency gain time at 99% of "lawful capacity" with "lawful capacity" defined as 133% of design capacity, but who are not eligible for administrative gain time, provisional credits, or control release, or who lost the benefit of such credits. Id. at S376, ___ So.2d at ___.
[3] Members of Offender Group 5 include offenders whose offenses were committed on or after July 1, 1988, but before September 1, 1990, and who are eligible for provisional credits at the 97.5% threshold, but who are not eligible for control release. See Winkler, 27 Fla. L. Weekly at S376, ___ So.2d at ___.
[4] The Preamble to the Act provides as follows:

Be It Enacted by the Legislature of the State of Florida:
Section 1. This act may be cited as the "Law Enforcement Protection Act."
Section 2. Legislative findings and intent. 
(1) The Legislature finds that law enforcement officers, correctional officers, state attorneys, and assistant state attorneys occupy a unique position in civilized society. As the first line of defense against lawlessness and violence, they are charged with the duty of protecting the citizens and enforcing the laws of this state. Because of such duty, law enforcement and correctional officers are constantly exposed to great risk of personal injury and death, and consequently are entitled to the greatest protection which can be provided through the laws of this state.
(2) The Legislature further finds that there have been numerous violent offenses against law enforcement and correctional officers, including a tragic number of homicides. Sixty-six Florida police officers, three correctional officers, and one correctional probation officer have been murdered in the line of duty since January 1, 1978. Those who commit such crimes do so not only against the law enforcement and correctional officers, but, because of the important position entrusted in them by the state, against the very fabric of our society. The Legislature therefore finds it necessary for the citizens of Florida to send a clear message to the criminal element that Florida will not tolerate the vicious murders, assaults, and batteries committed on its law enforcement and correctional officers.
(3) Citizen groups such as Support Cops On Toughening Time (S.C.O.T.T.) have been formed to help bereaved law enforcement families cope with their tragedies and to draw the attention of the Legislature and others to the magnitude of the problem. This act is therefore dedicated to the memory of the police officers who were murdered in the line of duty since January 1, 1988: Victor Estefan, Miami; Scott Rakow, Miami Beach; Ernest K. Ponce DeLeon, Tallahassee; David Wayne Moss, Williston; Brian Heywood Chappel, West Palm Beach; Richard Boles, Metro-Dade; David Strzalkowski, Metro-Dade; Porfirio Soto, Tampa; Stephen Franklin House, Titusville; Donald Ray Cook, Escambia County; and Hugh Ellis Thomas, Seminole County.
(4) It is the intent of the Legislature that persons convicted of crimes of violence against law enforcement officers, correctional officers, state attorneys, or assistant state attorneys shall be punished appropriately in accordance with the severity of the offense, as set forth in this act.
Ch. 89-100, §§ 1-2, at 254-5, Laws of Fla.
[5] As to the Department's assertion that this Court should uphold the act based on City of Pensacola v. Shevin, 396 So.2d 179 (Fla. 1981), the Department is mistaken. While it is true that this Court stated that "[t]he fact that a somewhat detailed listing in a title is not complete, however, is of no consequence if the disputed sections relate to the general subject and the subject is expressed in the title," in this case, the disputed section does not relate to the subject expressed in the title. Therefore, Shevin does not support the Department's position.