891 So.2d 479 (2004)
STATE of Florida, Petitioner,
v.
Gary MATTHEWS, Respondent.
No. SC03-1676.
Supreme Court of Florida.
December 23, 2004.
*480 Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Celia Terenzio, Assistant Attorney General, Bureau Chief and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, FL, for Petitioner.
Carey Haughwout, Public Defender and Marcy K. Allen, Assistant Public Defender, Fifthteenth Judicial Circuit, West Palm Beach, FL, for Respondent.
LEWIS, J.
We have for review the decision in Matthews v. State, 854 So.2d 238 (Fla. 4th DCA 2003), which certified conflict with the decision in Duncan v. State, 686 So.2d 701 (Fla. 2d DCA 1996). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

*481 FACTS AND PROCEDURAL HISTORY
On June 14, 1990, Gary Matthews, the respondent, was charged in case number 90-1156 with battery on a law enforcement officer, escape, resisting a merchant without violence, petty theft, and two counts of resisting an officer with violence. Matthews entered a plea of nolo contendere to battery on a law enforcement officer, resisting an officer with violence, and the escape charge.[1] On September 17, 1990, Matthews was sentenced to serve two concurrent prison terms of five years each as a habitual felony offender with 134 days credit for time served for the charges of battery on a law enforcement officer and resisting an officer with violence, and was further sentenced to a consecutive five-year prison term for the escape charge pursuant to the sentencing guidelines. On October 25, 1990, the court amended Matthews' sentence for the escape charge and ordered him to instead serve five years of probation consecutive to the prison sentences for the other two charges. Matthews served his habitual offender prison sentences and subsequently was released on probation.
In 1994, while serving the probation portion of his 1990 sentence for the escape charge, Matthews was arrested and charged in case number 94-1592 with sexual battery with slight force and false imprisonment. On February 28, 1995, Matthews submitted a petition to the court to enter an admission to violating his probation on the escape charge. On March 23, 1995, the court revoked Matthews' probation for the escape charge in the 1990 case and sentenced him to serve four and one-half years in prison with credit for the 355 days he had served while awaiting sentencing. Matthews' prison term for the escape charge in case number 90-5611 was completed on May 29, 1996.
In case number 94-1592, a jury found Matthews guilty of sexual battery and false imprisonment. See Matthews v. State, 687 So.2d 908, 909 (Fla. 4th DCA 1997). On March 23, 1995, the same day Matthews was sentenced for his violation of probation, he was also sentenced to serve two concurrent terms of 127.7 months in prison for sexual battery and false imprisonment with 243 days credit for time served. The trial court did not specify how the overall term imposed in case 94-1592 related to the sentence for the escape charge in case number 90-5611, i.e., whether it was to be served consecutive to or concurrent with his sentence following his violation of probation. However, pursuant to section 921.16(1) of the Florida Statutes (1995),[2] because the trial court did not make a specification, the overall 127.7-month sentence was automatically structured to run consecutive to the four and one-half years' prison sentence for the violation of probation for the escape charge in case number 90-5611.
On January 29, 1997, Matthews' convictions for sexual battery and false imprisonment *482 in case number 94-1592 were reversed on appeal by the Fourth District. See Matthews, 687 So.2d at 910.[3] Subsequently, on August 26, 1997, Matthews entered a plea of nolo contendere for attempted sexual battery and false imprisonment. He was sentenced to five years in prison followed by four years on probation, with 1099 days credit for time served plus all unforfeited gain time for attempted sexual battery, and to a consecutive term of one year in prison with 1099 days credit for time served plus all unforfeited gain time for false imprisonment. Again, because the court did not direct that the sentence in case number 94-1592 was to run concurrent to the sentence in case number 90-5611, the sentence was structured to run consecutively pursuant to section 921.16(1) of the Florida Statutes (1997).
On June 9, 1998, Matthews' sentence in case number 94-1592 was amended due to a scrivener's error. The probationary period was moved from the attempted sexual battery charge to the false imprisonment charge to reflect the oral pronouncement at the August 26, 1997, sentencing proceeding. Pursuant to the amended sentence, Matthews received a five-year prison sentence with credit for 248 days, plus all DOC (Department of Corrections) time and any and all unforfeited gain time for attempted sexual battery, and for the false imprisonment charge he received a consecutive term of one year and one day in prison followed by three years and 364 days of probation with credit for 248 days, plus all DOC time and any and all unforfeited gain time. Again, as the court did not direct that the sentence in case number 94-1592 was to run concurrent with the sentence in case number 90-5611, the sentence was structured to run consecutively pursuant to section 921.16(1) of the Florida Statutes (1998).
Matthews' time served in custody for attempted sexual battery in case number 94-1592 was calculated beginning May 29, 1996.[4] Matthews served his prison term for attempted sexual battery, and on March 9, 1999, was released from prison. Matthews began serving the probationary term for the false imprisonment conviction upon his release.[5] On March 15, 2001, Matthews violated his probation for the false imprisonment charge. On October 4, 2001, Matthews was sentenced to a term of sixty months in prison for violation of probation on the false imprisonment charge.
On July 12, 2001, Matthews filed a Motion to Correct Sentencing Error pursuant to Florida Rule of Criminal Procedure 3.800 in case number 90-1156.[6] In his *483 motion, Matthews asserted that he should have been granted credit pursuant to Tripp v. State, 622 So.2d 941 (Fla.1993), for the time he served as a habitual offender for battery on a law enforcement officer and resisting an officer with violence. Matthews contended that Tripp credit should have been applied to the prison sentence imposed pursuant to the sentencing guidelines following the revocation of probation on the escape charge in case number 90-1156. Matthews asserted he was entitled to credit because the escape charge arose from the same scoresheet as the charges involving battery on a law enforcement officer and resisting an officer with violence. The trial court denied the motion. The trial court noted that when Matthews was resentenced on the escape charge following the probation violation, he was sentenced pursuant to the original sentencing guidelines scoresheet, which included the offenses for which he had been habitualized. The trial court held that Matthews was not entitled to Tripp credit on the escape charge because his sentence on the escape charge "was the only non-habitual sentence and was imposed pursuant to a sentencing guidelines scoresheet."
On appeal, the Fourth District examined this Court's decision in Tripp, and referred to Palmer v. State, 804 So.2d 455 (Fla. 4th DCA 2001), in which it had previously held that the Tripp rationale applied even where the defendant was sentenced as a habitual felony offender. See Matthews, 854 So.2d at 239. Relying upon Palmer, the Fourth District reversed the trial court's denial of relief. See Matthews, 854 So.2d at 240. The Fourth District determined that the record revealed that had Tripp credit been applied in the 1990 case, Matthews' sentence in the 1994 case would have started 453 days sooner than it did. See Matthews, 854 So.2d at 239. The district court also noted that a prisoner is entitled to correct credit for time served in an earlier case that impacts a subsequent release date. See id. With regard to the Tripp issue, the Fourth District certified conflict with Duncan v. State, 686 So.2d 701 (Fla. 2d DCA 1996), in which the Second District held that Tripp credit did not apply to habitual felony offender sentences. See Matthews, 854 So.2d at 240.

MOOTNESS
Matthews asserts that he was released from the Department of Corrections on October 1, 2003, without receiving any additional credit as a result of the Fourth District's decision. Matthews contends that the question of whether he was entitled to additional credit is moot.
The Fourth District below certified conflict with the Second District's decision in Duncan v. State, 686 So.2d 701 (Fla. 2d DCA 1996), providing this Court with discretionary jurisdiction to review its decision. See art. V, § 3(b)(4), Fla. Const. Notwithstanding that Matthews has been released from prison, this Court is exercising its discretion to retain jurisdiction in the instant action to address the conflict and resolve uncertainty with regard to the applicability of Tripp credit to habitual felony offender sentences. The mootness doctrine does not destroy our jurisdiction because the question before this Court is of great public importance and is likely to recur. See Holly v. Auld, 450 So.2d 217, *484 218 n. 1 (Fla.1984) ("It is well settled that mootness does not destroy an appellate court's jurisdiction ... when the questions raised are of great public importance or are likely to recur."); see also Tormey v. Moore, 824 So.2d 137 (Fla.2002); Enter. Leasing Co. v. Jones, 789 So.2d 964, 965-66 (Fla.2001); Gregory v. Rice, 727 So.2d 251, 252 n. 1 (Fla.1999) (citing Dugger v. Grant, 610 So.2d 428, 429 n. 1 (Fla.1992)). Moreover, this Court elects to proceed because the problem that the instant action presents is capable of repetition yet evading review. See Logan v. State, 846 So.2d 472, 473 n. 1 (Fla.2003); see also N.W. v. State, 767 So.2d 446, 447 n. 2 (Fla.2000) (noting that this Court may address an issue presented by a technically moot case if the case "presents a controversy capable of repetition, yet evading review").

TRIPP AND ITS PROGENY
In Tripp v. State, 622 So.2d 941(Fla.1993), this Court answered in the negative the following certified question:
IF A TRIAL COURT IMPOSES A TERM OF PROBATION ON ONE OFFENSE CONSECUTIVE TO A SENTENCE OF INCARCERATION ON ANOTHER OFFENSE, CAN JAIL CREDIT FROM THE FIRST OFFENSE BE DENIED ON A SENTENCE IMPOSED AFTER A REVOCATION OF PROBATION ON THE SECOND OFFENSE?
Id. at 941. In Tripp, the defendant pled guilty to two felony charges, specifically burglary and grand theft. See id. Pursuant to the sentencing guidelines, Tripp was sentenced to four years' imprisonment for the burglary charge followed by a consecutive term of four years' probation for the grand theft charge. See id. After serving his prison time, Tripp was released on probation. See id. Subsequently, Tripp violated his probation and his probation was revoked. See id. The trial judge then sentenced Tripp to four and one-half years' incarceration on the grand theft charge, but credited four years for time previously served on the burglary charge. See id. The district court reversed Tripp's award of credit for time served. See id.
On review, this Court agreed with the trial court that Tripp was entitled to the award of credit for time served, and determined that the sentencing method sanctioned by the district court was inconsistent with the intent of the sentencing guidelines. See id. at 942. Central to our decision in Tripp was adherence to the intent behind the sentencing guidelines. We observed that the purpose of the sentencing guidelines is
"to establish a uniform set of standards to guide the sentencing judge in the sentence decision-making process" so as to eliminate unwarranted variation in sentencing. Fla. R.Crim. P. 3.701(b). One guidelines scoresheet must be utilized for all offenses pending before the court for sentencing. Fla. R.Crim. P. 3.701(d)(1). A sentence must be imposed for each separate offense, but the total sentence cannot exceed the permitted range of the applicable guidelines scoresheet unless a written reason is given. Fla. R.Crim. P. 3.701(d)(12). Sentences imposed after revocation of probation must be within the recommended guidelines range and a one-cell bump. Fla. R.Crim. P. 3.701(d)(14).
Id. We noted that when Tripp was originally sentenced, the maximum jail time he could have received for the two counts within the permitted range of the sentencing guidelines was a total of four and one-half years. See id. Upon violation of probation, Tripp's maximum incarcerative sentence would have been five and one-half years, less credit for time served. See id. This Court recognized that unless Tripp *485 was given credit for time served, upon violation of probation, his total incarcerative sentence for the two crimes would have been eight and one-half years, three years more than was permitted by the original guidelines sentence. See id.
Our primary concern for not granting credit for time served on the original sentence of imprisonment was that "trial judges can easily circumvent the guidelines." Id. We sought to avoid the danger of the situation under the sentencing guidelines where trial judges can impose
the maximum incarcerative sentence for the primary offense and probation on the other counts. Then, upon violation of probation, the judge can impose a sentence which again meets the maximum incarcerative period. Without an award of credit for time served for the primary offense, the incarcerative period will exceed the range contemplated by the guidelines.
Id. We reasoned that both offenses were factors that were weighed in the original sentence under the sentencing guidelines through the use of a single scoresheet and "must continue to be treated in relation to each other, even after a portion of the sentence has been violated." Id. The Tripp rationale focused on the interrelatedness of the sentences computed on a single scoresheet and how the incarcerative period, even after violation of probation, could not exceed the range contemplated by the guidelines at the original sentencing.
One year after Tripp was decided, this Court addressed whether Tripp applied to the factual scenario presented in Cook v. State, 645 So.2d 436 (Fla.1994). In Cook, the defendant was convicted of several offenses in 1989 and placed on probation for those offenses. See id. at 436. In 1990, Cook was convicted of several new offenses and admitted to violating his probation for the 1989 offenses. See id. Cook was sentenced to concurrent four and one-half year prison terms for the 1990 offenses, and he was again placed on probation for the 1989 offenses, to be served consecutively to this prison sentence for the 1990 offenses. See id. Subsequently, Cook was released from prison after serving his time for the 1990 offenses and began serving probation for the 1989 offenses. See id. In 1991, Cook again violated his probation for the 1989 offenses. See id. Upon revocation of his probation, the trial court sentenced Cook to concurrent three-and-one-half-year prison terms for the 1989 crimes and denied Cook's request for credit for time served on the 1990 offenses. See id. at 437. As this Court had not yet decided Tripp, the district court affirmed the denial of credit. See id. Following the decision in Tripp, this Court quashed the district court's affirmance in Cook and remanded for further proceedings consistent with Tripp. See Cook, 645 So.2d at 437. On remand, the district court again affirmed the sentence imposed by the trial court. See id.
On review, we reversed the decision of the district court, and held that pursuant to Tripp, Cook should have been granted credit for the four and one-half years he served for the 1990 offenses when he was resentenced in 1991 for violating his probation on the 1989 offenses a second time. See id. We determined that at Cook's 1990 sentencing he was sentenced to the prison terms for the 1990 offenses to be followed by probation for the 1989 offenses on the same scoresheet and, therefore, that Cook's total sentence at the 1991 sentencing could not have exceeded the permitted range of his 1990 scoresheet plus a two-cell increase without a written reason. See id. Abiding by our rationale in Tripp, we emphasized, in holding Cook was entitled to credit, the interrelatedness of sentences *486 computed on a single scoresheet under the sentencing guidelines. See id. at 437-38.
In Hodgdon v. State, 789 So.2d 958 (Fla.2001), we further clarified our holding in Tripp. In Hodgdon, the defendant was sentenced in 1989 to fifteen years in prison for two counts (fifteen years for one count, five for another count to be served concurrently) to be followed by twenty years' probation for four separate charges (two ten-year concurrent probation terms to be followed by two consecutive terms of five years each). See Hodgdon, 789 So.2d at 961. After serving his prison time, Hodgdon was released and subsequently violated his probation. See id. At sentencing following the violation of probation, Hodgdon asserted that he was entitled to credit for the fifteen-year prison term served for each individual consecutive sentence of probation. See id. The trial court disagreed, and sentenced Hodgdon to a total of forty years in prison (two fifteen-year sentences and two five-year sentences, all sentences to run consecutively). See id. at 962. The trial court credited the fifteen years Hodgdon had served against the entire forty-year sentence rather than each individual sentence. See id. The district court affirmed the sentence. See id.
On review, we approved the sentence and held that "a defendant who violates probation on multiple counts imposed consecutive to a prison term is entitled to credit for the time served on the prison term as to the entire sentence imposed on the probation violation, not against each individual count on which probation was violated." Id. at 963. Significantly, this Court further provided that its "holding in Tripp was intended to prevent the circumvention of the guidelines by treating sentences computed on one scoresheet as an interrelated unit. Tripp was never intended to provide a sentencing boon or windfall to defendants upon violations of probation." Id.
Finally, we addressed Tripp in State v. Witherspoon, 810 So.2d 871 (Fla.2002). Specifically, we considered the following certified question:
When a defendant is originally sentenced consecutively on a single scoresheet, does the holding in Tripp v. State, 622 So.2d 941 (Fla.1993), require the granting of credit for time served in prison where the defendant's newly imposed sentence upon revocation of probation does not exceed the maximum permitted by the sentencing guidelines?
Id. at 872. In Witherspoon, we held that the certified question had been answered in the affirmative in Hodgdon, and further held that Tripp should be applied notwithstanding the fact that the newly imposed sentence is within the sentencing guidelines. See Witherspoon, 810 So.2d at 873.

DUNCAN v. STATE
The Fourth District in the instant action certified conflict with the Second District Court of Appeal's decision in Duncan v. State, 686 So.2d 701 (Fla. 2d DCA 1996). See Matthews, 854 So.2d at 240. In Duncan, the defendant was sentenced in three separate cases at one sentencing proceeding and received two guidelines sentences and a habitual offender sentence. See Duncan, 686 So.2d at 702. Duncan was sentenced to a term of imprisonment followed by probation for one of the guidelines sentences as well as a concurrent term of probation as a habitual offender. See id.[7] Duncan served his prison term pursuant to the guidelines sentence and *487 was placed on probation as a habitual offender. See id. Subsequently, Duncan violated his probation. See id. Upon revocation of probation, Duncan was sentenced to prison as a habitual offender without credit for the time he previously served in prison under the sentencing guidelines. See id.
On appeal, Duncan contended that Tripp entitled him to credit for the time he served pursuant to the guidelines sentence to be applied to his habitual offender sentence imposed upon resentencing. The Second District disagreed. In recognizing the holding in Tripp, the Second District focused on this Court's reasoning in Tripp that awarding credit is necessary to preserve the intent of the sentencing guidelines. See id. The Second District wrote:
Duncan's sentence in this case, however, is a habitual offender sentence to which the guidelines do not apply. Consequently, Duncan is not entitled to credit for the time he served pursuant to the guidelines sentence.
The danger sought to be avoided by Tripp  the imposition of prison time in excess of that mandated by the guidelines in circumstances where probation on one or more counts follows prison time on one or more others  simply does not inhere in the context of a habitual offender sentence for which the guidelines do not apply.
Id. Since the Second District did not apply Tripp to Duncan's habitual offender sentence, it is in conflict with the decision in Matthews, where the Fourth District expressly held that Tripp was applicable to habitual offender sentences.

ANALYSIS
As noted above, the Fourth District in the instant action certified conflict with the Second District's decision in Duncan v. State, 686 So.2d 701 (Fla. 2d DCA 1996), with regard to the issue of whether Tripp applies to habitual felony offender sentences. See Matthews, 854 So.2d at 240. At the root of this Court's decision in Tripp was "a desire to effectuate the intent underlying the sentencing guidelines." Hodgdon, 789 So.2d at 959. In Tripp, we explained that under the sentencing guidelines, while an individual sentence was required to be imposed for each offense, the offenses were interrelated because a single total sentencing guidelines range was required to be established on a single scoresheet. See Tripp, 622 So.2d at 942. If a defendant subsequently violated probation, the judge was restricted to sentencing that defendant within a one-cell increase above the original guidelines range. See id. This Court recognized that if a defendant was not granted credit for time served, the sentencing guidelines could be easily circumvented. See id.
We recently addressed Tripp in the context of sentencing under the Criminal Punishment Code ("CPC"). See Moore v. State, 882 So.2d 977 (Fla.2004). In Moore, the defendant was charged in each of two separate cases with grand theft and felony failure to appear. See id. A single CPC scoresheet that included all four counts was prepared. See id. In case one, Moore was sentenced to twenty-four months' imprisonment on each count, with the sentences to run concurrently, and in case two she received concurrent terms of five years' probation for each count, to run consecutively to the prison sentence in case one. See id. After completing the prison sentence for case one, Moore began her probation in case two. See id. Subsequently, Moore violated her probation. See id. The judge sentenced Moore for both counts in case two to thirty-six months in prison, with the sentences to run concurrently. See id. The trial judge denied Moore's motion to grant her credit *488 in case two for the time she served in case one, holding that Tripp and its progeny were not applicable because Moore was sentenced pursuant to the CPC, not the sentencing guidelines. See id. The First District affirmed Moore's sentence. See id.
On review, we agreed with the trial court that Tripp is not applicable to sentencing under the CPC. See Moore, 882 So.2d at 985. We emphasized that the concerns previously relevant to our analysis in deciding Tripp and its progeny under the sentencing guidelines, specifically, to avoid the imposition of prison time in excess of that mandated by the sentencing guidelines in circumstances where probation on one or more counts follows prison time on one or more counts, are no longer present in CPC sentencing. See id. Notwithstanding the use of a single scoresheet at the original sentencing proceeding, because the courts are no longer limited to a sentencing range in CPC sentencing and therefore do not treat separate offenses as an interrelated unit at the original sentencing, there is no justification for treating separate offenses as an interrelated unit after revocation of probation. See id. Therefore, unlike sentencing under the guidelines, in the context of CPC sentencing we have concluded that Tripp credit is not necessary to effectuate the intent of the CPC.
The danger sought to be avoided in Tripp  the imposition of prison time in excess of that mandated by the sentencing guidelines in circumstances where probation on one or more counts follows prison time on one or more counts  remains at the forefront of our analysis in determining whether Tripp credit should be applied to habitual offender sentences. At the outset, it must be noted that neither Tripp nor its progeny involved the habitual offender statute at issue in the instant action.
Under the sentencing guidelines, a narrow range of permissible sentences is determined through a strict mathematical formula. See Nettles v. State, 850 So.2d 487, 493 (Fla.2003). It is then within the trial judge's discretion to sentence the defendant within that narrow range. See id. However, a trial judge may classify a defendant as a habitual felony offender under certain circumstances and impose enhanced sentences pursuant to the habitual offender statute, section 775.084 of the Florida Statutes. See § 775.084, Fla. Stat. (1989);[8]see also Mills v. State, 822 So.2d 1284, 1289 (Fla.2002) ("In section 775.084, the Legislature has also authorized increased sentences for defendants who qualify as habitual felony offenders."). Habitual offender sentences are enhanced *489 sentences imposed in an attempt "to protect society from habitual criminals who persist in the commission of crime after having been theretofore convicted and punished for crimes previously committed." State v. Peterson, 667 So.2d 199, 200 (Fla.1996) (internal quotation marks omitted) (quoting Peterson v. State, 651 So.2d 781, 782-83 (Fla. 4th DCA 1995)).
The Legislature expressed that the primary purpose of the habitual felony offender statute is to incarcerate habitual offenders for extended terms. See § 775.0841, Fla. Stat. (1989). We have recognized that by enacting sections 775.084 and 775.0841 of the Florida Statutes "the legislature intended to provide for the incarceration of repeat felony offenders for longer periods of time.... [T]his is accomplished by enlargement of the maximum sentences that can be imposed when a defendant is found to be an habitual felon or an habitual violent felon." Daniels v. State, 595 So.2d 952, 954 (Fla.1992).
Sentencing under the habitual offender statute is permissive, not mandatory. See State v. Hudson, 698 So.2d 831, 832 (Fla.1997); Burdick v. State, 594 So.2d 267, 267-68 (Fla.1992). We have specifically stated that under "section 775.084, the sentencing court must sentence a habitual offender as provided, unless the court decides that `sentence under this section is not necessary for the protection of the public.'" Mack v. State, 823 So.2d 746, 751 (Fla.2002) (quoting § 775.084(4)(c), Fla. Stat. (1989)). Further, "[i]f the court finds that a habitual offender sentence is not necessary, `sentence shall be imposed without regard to this section.'" Id. (quoting § 775.084(4)(c), Fla. Stat. (1989)). Accordingly, once the sentencing court has determined that a defendant meets the habitual offender criteria, "it must make the decision whether to sentence him or her as such and must either impose a habitual offender sentence or impose sentence without regard to the habitual offender statute." Id.
Prior to 1988, when section 775.084 of the Florida Statutes was amended, habitual felony offender sentences were subject to the limitations of the sentencing guidelines. See State v. Callaway, 658 So.2d 983, 987 (Fla.1995). In 1988, the Legislature added subsection (4)(e), which provides: "A sentence imposed under this section shall not be subject to the provisions of s. 921.001 [the sentencing guidelines]." § 775.084(4)(e), Fla. Stat. (Supp.1988); ch. 88-131, § 6, at 709, Laws of Fla. The statute was further amended in 1989, but the above language in subsection (4)(e) was retained. Accordingly, the habitual offender statute in effect at the time of Matthews' sentencing expressly states that a sentence imposed under the habitual offender statute is not subject to the sentencing guidelines. See § 775.084(4)(e), Fla. Stat. (1989); Disbrow v. State, 642 So.2d 740, 741 (Fla.1994); see also Gipson v. State, 616 So.2d 992, 993 (Fla.1993). As this Court has recognized, "in enacting subsection (4)(e) in 1988 the legislature was attempting to sever application of the habitual offender statute from the sentencing guidelines." Burdick v. State, 594 So.2d 267, 270 (Fla.1992); see also Studnicka v. State, 679 So.2d 819, 821 (Fla. 3d DCA 1996) ("After 1988, the sentencing guidelines do not apply to habitual offender sentences.") (emphasis in original); Strickland v. State, 596 So.2d 1155, 1156 (Fla. 2d DCA 1992) (stating that in 1988, the habitual offender statute was amended to exempt it from the sentencing guidelines); Daniels v. State, 591 So.2d 1103, 1104 (Fla. 5th DCA 1992) (noting that once a defendant is adjudicated a habitual offender with regard to an offense, that offense is removed from sentencing guidelines *490 consideration); Holley v. State, 577 So.2d 624, 625 (Fla. 1st DCA 1991) ("[H]abitual offender sentencing is by statute exempted from sentencing guidelines procedures."); Bateman v. State, 566 So.2d 358, 359 (Fla. 4th DCA 1990) ("[S]ection 775.084(4)(e), Florida Statutes, effective October 1988, ... removes habitual offender sentences from the sentencing guidelines.").
In determining whether Tripp credit should apply to habitual offender sentences, the intent and purpose underlying the habitual offender statute and the sentencing guidelines are of paramount importance. We have recognized that Tripp was grounded upon "a desire to effectuate the intent underlying the sentencing guidelines." Hodgdon, 789 So.2d at 959. The sentencing guidelines limit the discretion of sentencing judges to impose presumptive sentences and only allow departure upon written findings of aggravation or mitigation. See Burdick, 594 So.2d at 270 n. 8. We have also noted that the habitual offender statute contradicts the principles of the sentencing guidelines. See id. By classifying a defendant as a habitual offender, the trial judge regains all the discretion the sentencing guidelines were intended to reduce. See id. Therefore, unlike the sentencing guidelines which "take away much of the trial court's discretion in order to establish consistency in sentencing," the habitual offender statute "gives the trial court broad latitude to sentence defendants to extended prison terms in an effort to protect society from recidivists." State v. Peterson, 667 So.2d 199, 201 (Fla.1996). We have recognized that the sentencing guidelines and the habitual offender statute are "in sharp contrast." Id. at 201.
The goal of the sentencing guidelines scoring system  to achieve control over the total prison term for all guidelines sentences scored on the same scoresheet and imposed at the same sentencing proceeding  was attained in Tripp and its progeny, which all involved sentences imposed pursuant to the sentencing guidelines. In those decisions, we addressed concerns unique to the sentencing guidelines. Offenses were required to be treated as interrelated under the sentencing guidelines until all sentences and probationary terms were satisfied because the offenses scored together at the original sentencing proceeding created the initial sentencing range  the minimum and maximum sentence.
By contrast, under the habitual offender statute, the offenses at the original sentencing proceeding are not factors considered together to establish a sentencing range. Instead, the habitual offender statute prescribes life in prison as a specific sentence for first-degree felonies, and a maximum permissible sentence for second- and third-degree felonies. See § 775.084(4)(a), Fla. Stat. (1989).[9] This is consistent with the primary purpose of the habitual felony offender sentence, which was intended to provide the availability of increased penalties above guidelines sentences. When a defendant is sentenced as a habitual offender for some counts and under the sentencing guidelines for other counts, the habitual offender sentences are not factored into the overall sentencing *491 guidelines range. Therefore, pursuant to the express language of the habitual offender statute that a "sentence imposed under [the habitual offender statute] shall not be subject to the provisions of s. 921.001 [the sentencing guidelines]," § 775.084(4)(e), Fla. Stat. (1989), and our previous determination that the habitual offender statute contradicts the principles of the sentencing guidelines, we conclude that Tripp credit, which we granted in the context of the sentencing guidelines to effectuate the intent underlying the guidelines, does not apply to habitual offender sentences.
In the instant action, notwithstanding the use of a single scoresheet, the offenses sentenced pursuant to the habitual offender statute at the original sentencing were not factored into the computation of Matthews' guidelines sentence for the escape charge. Therefore, even after revocation of probation, the prison time Matthews served as a habitual offender should not have been factored into, or credited to, the prison time he had to serve pursuant to the sentencing guidelines upon revocation of probation. As discussed above, in Tripp, our concern, in the context of the sentencing guidelines, was to ensure that trial courts sentenced defendants within the originally established sentencing guidelines range even after a violation of probation. This concern is not present in sentencing under either the CPC, as we held in Moore, or under the habitual offender statute, as in the instant action, because notwithstanding that a single scoresheet was used, in neither context are separate offenses treated as an interrelated unit at the original sentencing proceeding, and thus the separate offenses should not be considered interrelated upon revocation of probation.
Here, Matthews' three 1990 sentences imposed on the battery on a law enforcement officer, resisting an officer with violence, and the escape charges were never required to collectively fall within an overall guidelines range because two of the charges were habitual offender sentences. Therefore, Matthews' escape charge was the only offense considered under the sentencing guidelines originally when the trial court established a sentencing guidelines range. Escape is a second-degree felony. See § 944.40, Fla. Stat. (1989). At the time of Matthews' sentencing, the maximum sentence authorized by law for such an offense was fifteen years. See § 775.082, Fla. Stat. (1989). Significantly, the guidelines prison sentence of four and one-half years in prison that Matthews received for the escape charge after violating his five-year guidelines probation sentence did not exceed the total guidelines sentence permissible.[10] There is no justification to treat separate offenses as an interrelated unit upon revocation of probation in the instant action when the separate offenses were not treated as an interrelated unit at the original sentencing because the habitual offender sentences were not factored into the computation of the guidelines sentence. Accordingly, we hold that Tripp credit is not applicable to habitual offender sentences. We therefore quash the Fourth District's decision in Matthews, and approve the Second District's decision in Duncan.
It is so ordered.
*492 PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The record on appeal indicates that the State elected not to prosecute the resisting a merchant without violence charge, the petty theft charge, and one count of resisting an officer with violence.
[2] Section 921.16(1) of the Florida Statutes (1995) provides:

A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit or in consolidated indictments, informations, or affidavits shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively. Sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently.
(Emphasis added.)
[3] The Fourth District Court of Appeal held that the trial court's failure to certify that Matthews waived his presence during bench conferences concerning jury selection violated his right to be present at all critical stages of his trial and required reversal of his convictions and remanded for a new trial. See Matthews, 687 So.2d at 910.
[4] May 29, 1996, was the date Matthews completed his sentence for the escape charge in the 1990 case.
[5] At the time of his release, Matthews had served 1104 days (from May 29, 1996, to March 9, 1999) in custody for attempted sexual battery in case number 94-1592. However, the record indicates that Matthews did not serve the year and a day consecutive prison sentence for false imprisonment because he was inadvertently released when the sentence for attempted sexual battery was completed. The Department of Corrections erred by structuring the sentence for false imprisonment to run concurrently, instead of consecutively, with the sentence for attempted sexual battery.
[6] This Court has held that "rule 3.800(a) vests trial courts with the broad authority to correct an illegal sentence without imposing a time limitation on the ability of defendants to seek relief." Carter v. State, 786 So.2d 1173, 1176 (Fla.2001). In its order, the trial court noted that Matthews alleged that his motion was filed pursuant to rule 3.800(b), but determined that rule was not applicable to the circumstances of Matthews' case. The trial court properly construed Matthews' motion has having been filed pursuant to rule 3.800(a) because the motion was not ripe under subdivision (b) of the rule since it was not filed prior to or during the pendency of a direct appeal from his 1990 convictions and sentences.
[7] The Second District's opinion does not reveal the details of Duncan's second guidelines sentence.
[8] Section 775.084, Florida Statutes (1989), provides, in pertinent part:

(1) As used in this act:
(a) "Habitual felony offender" means a defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses;
2. The felony for which the defendant is to be sentenced was committed within 5 years of the date of the conviction of the last prior felony or other qualified offense of which he was convicted, or within 5 years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later;
3. The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this section; and
4. A conviction of a felony or other qualified offense necessary to the operation of this section has not been set aside in any post-conviction proceeding.
[9] Section 775.084(4)(a) of the Florida Statutes (1989), provides:

The court . . . shall sentence the habitual felony offender as follows:
1. In the case of a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
[10] Under the law at the time in 1990, had the trial court not sentenced Matthews for the escape charge under the sentencing guidelines, the court could have imposed a maximum thirty-year sentence pursuant to the habitual offender statute. See § 775.084(4)(a), Fla. Stat. (1989) (providing that in the case of a felony of the second degree, escape, a habitual felony offender may be sentenced for a term not exceeding thirty years).